566 A.2d 889

**John and Jane DOE, Appellants,**

**v.**

**Pamela T. DYER–GOODE, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1989.

Filed Nov. 29, 1989.

Julie Shapiro, Philadelphia, for appellants.

James L. Griffith, Philadelphia, for appellee.

Before OLSZEWSKI, DEL SOLE and JOHNSON, JJ.

DEL SOLE, Judge:

This is an appeal from an order granting Appellee's preliminary objections and dismissing Appellants' complaint with prejudice. Notwithstanding Appellants' plea to amend their complaint to claim damages, we conclude that the trial court's order must be affirmed because no viable cause of action is set forth in the Complaint.

In considering preliminary objections in the nature of a demurrer, the complaint must be examined to determine whether it sets forth a cause of action which, if proved, would entitle the party to the relief sought; if such is the case, the demurrer may not be sustained, but if the complaint fails to set forth a cause of action, preliminary objections in the nature of a demurrer are properly sustained. *Rose v. Wissinger*, 294 Pa.Super. 265, 439 A.2d 1193 (1982).

The Complaint at issue alleges that Appellants sought the services of Appellee-doctor in regard to a pre-marital blood test. Although Appellant, John Doe, did consent to have his blood withdrawn, he did not consent to an "AIDS test." Nevertheless, he was informed by the doctor that he had tested positive for AIDS. John Doe subsequently retested negative for exposure to the AIDS virus. Based upon this set of submitted facts the Appellants sought to recover by setting forth six separate causes of action.

In Count I a claim is made by John Doe for invasion of privacy. Appellants contend that John Doe's privacy was violated in two instances. The first occurred when the Appellee doctor "interfered with and violated" the plaintiff's bodily integrity by undertaking an examination of plaintiff's HIV status without plaintiff's knowledge or consent. It is also alleged that the doctor's creation and maintenance of records which contained these results constituted a further violation of the right to privacy.

"An action for invasion of privacy is comprised of four distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life and (4)

publicity placing the person in a false light." *Harris by Harris v. Easton Pub. Co.*, 335 Pa.Super. 141, 152, 483 A.2d 1377, 1383 (1984). As noted by the trial court, the Appellants' claims do not fall under the last two sections since it is not alleged that the test results were at any time publicized. Creating and maintaining a person's health records cannot be equated with publication. The second section which deals with those who appropriate a person's name or likeness is also inapplicable under the facts alleged. The remaining section which speaks to the unreasonable intrusion upon the seclusion of another is referred to in Section 652B of the Restatement (Second) of Torts which states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

The "invasion of bodily integrity" cited by Appellants does not come within the ambit of this tort. Appellant, John Doe, consented to the extraction of his blood for testing. In *Harris, Id.*, the court stated that "[t]he defendant is subject to liability under this section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." Because John Doe relinquished his blood sample to the doctor, this sample was no longer held in "private seclusion" by Mr. Doe. Thus the fact that an unauthorized test was performed on this sample cannot establish a claim for invasion of privacy.

Appellants next contend that the facts of this case are sufficient, if proven, to constitute a battery based upon lack of informed consent.

 In this Commonwealth individuals who are mentally and physically able to discuss their medical condition and who are not in an emergency situation, must give their informed consent as a prerequisite to a surgical operation by a physician. *Cooper v. Roberts*, 220 Pa.Super. 260, 286 A.2d 647, 649 (1971). To perform an operation without such

informed consent is considered a technical assault, making the physician liable for any injuries resulting from the invasion, regardless of whether the treatment was negligently administered. *Id.* In determining whether a patient's consent was indeed "informed," one must consider whether the physician disclosed all the facts, risks and alternatives which a reasonable person would deem significant in making a decision to undergo a recommended procedure. *Boyer v. Smith,* 345 Pa.Super. 66, 70 n. 2, 497 A.2d 646, 648 n. 2 (1985).

In dismissing this count of the complaint the trial court held that a cause of action based upon lack of informed consent could not stand in this case because prior caselaw has only extended this doctrine to surgical or operative procedures. However, even if we were to conclude that the insertion of a needle under the skin falls into the category of a surgical or operative procedure, Appellants' claim cannot stand. There is no allegation in this case that John Doe was not informed of the risks associated with the procedure he was about to undergo—the withdrawal of a blood sample by extraction through a needle. The intrusive conduct was the prick of the skin by a needle. The blood sample which was withdrawn and later tested is simply a by-product of the medical procedure, much like a tissue sample taken from a patient in a biopsy procedure. Appellant gave his consent to have his blood withdrawn for a testing purpose. The fact that an additional test was performed on this blood sample cannot constitute grounds for an action in battery.

It is also alleged that the doctor's actions were sufficient to make out a claim for breach of contract and breach of a duty to deal in good faith. Appellants allege in their Complaint that John Doe accepted professional services from the doctor on the "understanding" that he was receiving only such services as he had requested. When a HIV antibody test was performed which was not requested or authorized by John Doe, this agreement was breached.

■ An express agreement is not alleged by the facts submitted. Appellants do not contend that they reached an agreement with their doctor only to perform certain tests and to exclude all others. The complaint simply alleges that John Doe understood that he would only be receiving certain services. This statement alone is insufficient to support a conclusion that an express or implied contract existed.

■ An implied duty to deal in good faith was also alleged to have been breached by the Appellee-doctor. Appellee argues that a cause of action based upon an implied duty to deal in good faith between a physician and patient is not recognized in this Commonwealth. Indeed Appellants cannot point to any caselaw to support their claim. Moreover, although Appellants contend that John Doe did not consent to an HIV test, the Complaint does not allege facts which would show that the performance of this test violated the doctor's obligation to act in her patient's best interest.

■ The fifth cause of action set forth in the Complaint is based in negligence. Contrary to Appellants' contention the Appellee did move to have this count stricken based upon her contention that Appellants' allegations were made without any facts to support a negligence claim. The trial court then ruled that count five of the Complaint should be stricken because the Appellants had failed to set forth any professional duty which the doctor breached by testing John Doe for AIDS, nor any injury resulting therefrom. Paragraph 37 of the Complaint referring to the negligence claim states:

Defendant was negligent and/or grossly negligent in her actions, including, but not limited to, testing plaintiff without his knowledge or consent and for no justifiable medical reason, in processing and handling test result information with the result that plaintiffs were wrongly informed that he had tested positive for AIDS, and in informing plaintiffs of that result without proper or adequate counselling.

■ Allegations in a negligence action must aver that a given standard of care was called for and that such standard was breached or that defendant acted less reasonably than a reasonable person would act. The Complaint must also allege that such negligence resulted in an injury. *Department of Transportation v. Bethlehem Steel Corp.*, 28 Pa.Commw.Ct. 214, 368 A.2d 888 (1977). The instant complaint fails to meet these requirements. Appellants have not included in their Complaint any duty which was violated. The Complaint does not identify any duty to restrain from having an HIV blood test performed on a blood sample when consent has not been obtained, nor will we impose such a duty. Appellants' complaint also refers to the doctor's actions in which the test results were communicated to John Doe without advise about counseling, yet Appellants are unable to establish any duty requiring a physician to notify a patient of counselling options when the physician is reporting test results. Further, although the Complaint does allege that Appellants were wrongly informed that John Doe tested positive for AIDS, the Complaint does not allege that the Appellee herself performed the test. Although the test results were ultimately found to be inaccurate, the doctor cannot be faulted for reporting to her patient the results which she obtained. In fact, failure to promptly report this result which suggested a serious illness may have become the basis of a negligence claim.

■ The final cause of action asserted by Appellants is for intentional infliction of emotional distress. Appellants base this cause of action on the doctor's conduct in conveying to John Doe the information that he tested positive for AIDS. In considering and dismissing the cause of action from Appellants' Complaint the trial court found that Appellants failed to plead conduct which is extreme and outrageous and beyond all bounds of decency such that the action would be characterized as atrocious and utterly intolerable in a civilized society. *See Banyas v. Lower Bucks Hospital*, 293 Pa.Super. 122, 437 A.2d 1236 (1981). We

agree with the trial court's assessment of Appellants' claim and find, apart from Appellee's assertion that this cause of action is not specifically recognized in Pennsylvania, that Appellants' Complaint in this regard cannot stand because the facts presented do not, as a matter of law, show extreme and outrageous conduct. *Daughen v. Fox*, 372 Pa.Super. 405, 539 A.2d 858 (1988).

Order affirmed.