605 A.2d 397

Patricia A. CAVALIERE, an Individual; Lettie M. Gustis, an Individual; Kristie L. Gustis, an Individual, Appellants,

v.

DUFF'S BUSINESS INSTITUTE, a Corporation and Phillips Colleges, Inc., a Corporation.

Superior Court of Pennsylvania.

Submitted Oct. 15, 1991.

Filed March 24, 1992.

358

---

Donald H. Presutti, Pittsburgh, for appellants.

Amy Acheson, Pittsburgh, for appellees.

Before BECK, JOHNSON and HOFFMAN, JJ.

BECK, Judge:

The issue is whether a complaint that pleads generally that students at a private court reporting school were given inadequate and improper instruction, in breach of an alleged implied contract for a quality education, states a cause of action for breach of contract.

The trial court held that the complaint failed to state a cause of action and dismissed it. Upon review of the record, the briefs submitted by the parties and all pertinent authorities, we find that the trial court did not err. Therefore, we affirm.

The relevant facts and procedural history are as follows. Appellants Patricia Cavaliere, Lettie Gustis, and Kristie Gustis enrolled in a two year court reporting program offered by appellees, Duff's Business Institute and Phillips Colleges, Inc. (hereinafter collectively referred to as "the Institute"). Appellants paid tuition for the first and second quarters of the program; they also bought the necessary books and materials. The course of instruction offered by the Institute was set forth in its student handbook and catalog. Appellants aver that, through the Institute's agents, handbook and catalog, the Institute made the following representations:

1. that the Institute's court reporting program was approved by the National Shorthand Reporters Association (NSRA);

2. that a graduate of the Institute could become NSRA certified and/or enjoy a career as a court reporter;

3. that the program was qualified as an approved educational program by the Pennsylvania Higher Education Assistance Program (PHEA); and

4. that the Institute provided a quality education.

Although appellants contend that some of the representations made by the Institute were contained in the student handbook and catalog, a copy of those documents were not attached to the complaint.

Appellants claim that during the first quarter of the program, the Institute failed to provide "adequate, proper and quality" instruction and proper instructional tools. Appellants further allege that because of this, they were unable to advance to the second quarter courses and were required to repeat the first quarter courses. When appellants repeated these courses, they had a new instructor. However, this instructor quit a few weeks into the course. Appellants contend that the replacement instructor was not qualified adequately to instruct the class. Thus, on February 20, 1990, appellants withdrew from the program.

Appellants' complaint contains numerous allegations based on these facts. They are presented in a scattershot manner and consist of claims that the Institute breached its agreement to provide a quality education, adequate instruction and qualified instructors, misrepresented that it would provide a quality education, and breached NSRA and PHEA standards. The complaint does not state what the precise deficiencies in the program were, what qualifications the instructors lacked, or exactly what the standards of the NSRA and PHEA were and how they were breached. The complaint also generally alleges that the Institute violated the Unfair Trade Practices and Consumer Protection Law. The damages sought included a refund of tuition, lost wages, parking fees and mileage, costs of equipment, lost interest on investments and reimbursement of government tuition loans.

The Institute filed preliminary objections in the nature of a demurrer and a motion to strike. They argued that appellants had failed to allege how the alleged representations by the Institute were false, what the actual agreement between the parties was and how it was breached. Appellees noted that appellants had *not* claimed that the representations about the Institute's approval by the NSRA or PHEA were false. Lastly, they objected to the general lack of specificity of the complaint and appellants' failure to attach a copy of the student handbook or NSRA and PHEA standards to the complaint.

In response, appellants attempted to explain and clarify their pleading, although they did not seek to amend their complaint and, therefore, added nothing to the specificity of the factual allegations. They contended that their complaint pleaded only one cause of action, sounding in breach of contract, that the alleged contract was not based on a writing so that no documents needed to be attached to the complaint, and that the alleged contract was a "verbal implied agreement". Appellants argued that the student handbook was referred to "simply to illustrate the Defendants implied claim that they provide adequate, proper court reporting education."

On November 6, 1990, the trial court entered an order sustaining the appellees' preliminary objections in the nature of a demurrer and dismissing the complaint. The trial court relied on its own decision in *Joseph N. v. Shadyside Academy*, 132 P.L.J. 569 (1984), wherein the court had dismissed an action similar, although not identical, to this one. In *Joseph*, plaintiffs were a thirteen year old child and his parents. They sued a private academic institution which the child had attended for three years and from which he had been expelled for misbehavior. They alleged that they had informed the school of the child's behavior problems and that although the school had represented that it provided such superior education that the behavior problems would be negated, this had not occurred. Thus, plaintiffs alleged, *inter alia*, breach of agreement to provide quality education. The trial court did not permit the plaintiffs to plead this cause of action, relying on decisions from numerous other jurisdictions in which similar claims for what has been labeled "educational malpractice" had been rejected. The *Joseph* court found that the alleged agreement and the alleged breach were both too vague to form a basis for relief, that there was no workable standard of care by which to judge the defendant's performance, and that there was too much uncertainty in ascertaining both damages and the cause thereof. *Id.* at 570–71.

The trial court found the selfsame deficiencies in the instant case. It noted the generality of appellants' allegations, finding that they had not alleged a definite standard of education which had been promised nor had they specified how that standard had been breached. Since the allegations were purely conclusory, consisting only of a statement that a "quality" education had been promised and that the actual instruction had not been of sufficient "quality", the court dismissed the complaint.[1]

■ On review of an order sustaining preliminary objections in the nature of a demurrer and dismissing a complaint, our review is plenary. We must determine whether the trial court correctly determined that, taking as true all properly pleaded material facts and disregarding all pleaded conclusions of law, under no circumstances will the law permit recovery on the complaint. *Pawlowski v. Smorto,* 403 Pa.Super. 71, 588 A.2d 36 (1990); *Doe v. Dyer–Goode,* 389 Pa.Super. 151, 566 A.2d 889 (1989), *appeal denied,* 527 Pa. 587, 588 A.2d 509 (1990).

A proper analysis of the question presented in this case requires a thorough review of the present state of the law regarding claims against educational institutions in which the quality or nature of the instruction given is at issue. The appellate courts of this Commonwealth have not previously considered the circumstances under which a student may recover on a common law action for breach of contract against a private trade school. However, the Commonwealth Court has addressed a somewhat analogous situation, i.e. the right of a student to sue a public academic

1. The court did not specifically deal with appellants' Unfair Trade Practices and Consumer Protection Law cause of action. We need not address this issue, since appellants have presented no argument as to this cause of action in their brief to this court.

We also note that the trial court specifically invited appellants to seek leave to amend their complaint to further specify the agreement and breach. Since appellants had already filed this appeal, the court stated that if appellants wished to amend, they should request that this court remand the matter to permit amendment. Appellants have not made such a request in their brief, arguing instead that the complaint is sufficient in its present form.

institution for breach of contract or in tort for failure to provide the student with certain services or instruction. Moreover, courts across the country have considered in general the extent to which common law actions seeking redress for "educational malpractice", whether in tort or contract, should be recognized.

In what appears to be the first reported decision on this issue, *Peter W. v. San Francisco Unified School District,* 60 Cal.App.3d 814, 131 Cal.Rptr. 854 (1976), a student sued the public high school he had attended alleging that although he had graduated, the school had negligently failed to provide him with basic skills in reading and writing. The court refused to recognize a cause of action for educational malpractice on several grounds. As the *Peter* court's analysis has more recently been described:

> For one, the conflicting theories of the science of pedagogy prevented the construction of a workable rule of care. In other words, different but acceptable scientific methods of academic training made it unfeasible to formulate a standard by which to judge the conduct of those delivering the services. Second, the nature of the claim prevents a finding of legal causation. For example, failure in schools could stem from a variety of factors including the student's physical, neurological, emotional, cultural and environmental background, as well as the actual system itself. Lastly, school systems are already beset by social and financial problems for which no solution is yet available. To expose the schools to liability in light of the above policy considerations would be an undue burden on society.

*Swidryk v. Saint Michael's Medical Center,* 201 N.J.Super. 601, 493 A.2d 641, 643 (1985).

This rationale has been followed by courts in numerous jurisdictions, including Pennsylvania. In *Aubrey v. School District of Philadelphia,* 63 Pa.Commw. 330, 437 A.2d 1306 (1981), and *Agostine v. School District of Philadelphia,* 106 Pa.Commw. 492, 527 A.2d 193, *appeal denied,* 517 Pa. 610, 536 A.2d 1334 (1987), the Commonwealth Court reject-

ed similar suits against public schools. In *Aubrey,* a student who failed to graduate with her class because she had failed a health education class sued the school on several theories of relief. The court affirmed the dismissal of her complaint on demurrer, stating that important policy reasons prevented the court from entertaining such a suit. The court not only agreed that it was inappropriate for courts to make judgments on educational policy, but also found it to be unwise for courts to engage in day-to-day review of the implementation of such policies. *Aubrey,* 63 Pa.Commw. at 332–334, 437 A.2d at 1307 (citing *Donohue v. Copiague Union Free School,* 47 N.Y.2d 440, 418 N.Y.S.2d 375, 391 N.E.2d 1352 (1979)). The court further relied on the fact that the Supreme Court of Pennsylvania has long vested substantial discretion in school authorities, who by statute are charged with administering the public school system, whose conduct is governed by extensive statutory and regulatory controls, and who, unlike the courts, have substantial expertise in all aspects of educational policy and administration. *Id.* (citing *Regan v. Stoddard,* 361 Pa. 469, 65 A.2d 240 (1949)).

More recently, in *Agostine,* the Commonwealth Court rejected a negligence action in which a student alleged that she had improperly been placed in classes for the educable mentally retarded when she was in fact learning disabled. The court restricted plaintiff to relief under the Public School Code, pursuant to which the Department of Education regulates the training and education of exceptional students, and found that the plaintiff had no separate right to a private cause of action for monetary relief. *Id. See also Hoffman v. Board of Education,* 49 N.Y.2d 121, 424 N.Y.S.2d 376, 400 N.E.2d 317 (1979); *Hunter v. Board of Education of Montgomery County,* 292 Md. 481, 439 A.2d 582 (1982); *Tubell v. Dade County Public School,* 419 So.2d 388 (Fla.Dist.Ct.App.1982).

This reasoning in support of barring a cause of action for educational malpractice against a public school has equally been applied to such actions against a variety of private

schools. For example, in *Helm v. The Professional Children's School*, 103 Misc.2d 1053, 431 N.Y.S.2d 246 (1980), the court specifically found that the same concerns regarding the ability to establish a causal link between the student's failure to learn and the school's educational program were present in an action against a private academic institution.

However, in some of the cases involving actions against private educational institutions, the courts have recognized that in certain limited situations a private institution may be subject to a cause of action for breach of contract. In one such case, *Paladino v. Adelphi University*, 89 A.D.2d 85, 454 N.Y.S.2d 868 (1982), the court opined that although many of the reasons for refusing to recognize a cause of action for an alleged general failure to educate against a public school may apply equally to a private institution, in some such cases there may be available proof of a specific contractual undertaking which was breached, clearly and directly resulting in at least some demonstrable damages. The *Paladino* court opined:

> If in a case such as this, a private school were to accept a student's tuition and thereafter provide no educational services, an action for breach of contract might lie. Similarly, if the contract with the school were to provide for certain specified services, such as for example, a designated number of hours of instruction, and the school failed to meet its obligation, then a contract action with appropriate consequential damages might be viable.

*Id.* at 92, 454 N.Y.S.2d at 873. The court continued, however, by pointing out that the facts alleged in the case before it did not include allegations of such a specific contractual undertaking, but rather consisted of allegations of a general failure to educate. In such a case, the court concluded that whether the action was labeled as a tort action or a breach of contract action was irrelevant, since in either situation the court would be forced to enter into an inappropriate review of educational policy and procedures:

The asserted breach is predicated upon the quality and adequacy of the course of instruction. The claim requires the factfinder to enter the classroom and determine whether or not the judgments and conduct of professional educators were deficient.... It is readily apparent that the claims entail an analysis of the educational function.... The quality of the education and qualifications of the teachers employed by the private school are concerns not for the courts, but rather for the State Education Department and its commissioner.

*Id. See also Wickstrom v. North Idaho College,* 111 Idaho 450, 725 P.2d 155 (1986).

Of particular interest in this regard is a very recent case decided by the Court of Appeals of Ohio in which the court recognized the existence of a private cause of action for breach of contract against a private trade school. In *Malone v. Academy of Court Reporting,* 64 Ohio App.3d 588, 582 N.E.2d 54 (1990), several former students of a court reporting school sued the school, alleging, *inter alia,* fraud and breach of contract. The students alleged that they had enrolled at the school to receive paralegal training. They stated that the school had solicited their enrollment through a variety of advertising methods in which the school had represented that completion of the paralegal curriculum would yield an associate's degree in paralegal studies, that the school had job placement services, that starting salaries for graduates were guaranteed to be at a certain level, that it had admission standards, a financial aid program, and training in Westlaw and Lexis, and that the study hours were transferable to the Ohio State University. The plaintiffs later learned, however, that the school was not certified or accredited by the state to issue an associate's degree and subsequently withdrew.

The trial court dismissed the complaint, largely for the reasons relied upon by other courts who have refused to recognize educational malpractice claims. The appellate court disagreed and reinstated the complaint, drawing a distinction between a general allegation of educational mal-

practice and a suit seeking redress for specific instances of misrepresentation and breach of a specific contractual undertaking, as follows:

> Defendants rely on *Paladino v. Adelphi University* ... for the proposition that any allegation directed to the adequacy or quality of education received is essentially a claim for educational malpractice which must be barred on public policy grounds. The so-called educational malpractice claim has not been well-received by the few courts which have addressed the issue. The Seventh District Court of Appeals of Ohio affirmed a motion to dismiss a complaint filed against the Steubenville Board of Education where the plaintiff alleged that he was promoted through high school as an athlete without ever being taught how to read and write.

> In this case, however, plaintiffs have not mentioned educational negligence or malpractice anywhere in their complaint. Further, they have not argued on appeal that they presented this cause of action. They claim breach of contract [and] misrepresentation....

> In Ohio, breach of contract and misrepresentation claims by students against educational institutions have been entertained by the courts for some time.... In *Behrend [v. State,* 55 Ohio App.2d 135, 379 N.E.2d 617 (1977)], this court held that an action would lie for an implied contract to provide accredited academic training where a state university closed down its school of architecture after losing accreditation. Moreover, we recognized in that case that an action for misrepresentation would lie for untrue or misleading statements about accreditation. Hence, plaintiffs have stated claims for breach of contract and misrepresentation.

*Id.* at 593–94, 582 N.E.2d at 58–59 (citations omitted). Thus, the Ohio court engaged in an analysis similar to that pursued in *Paladino. See also Blane v. Alabama Commercial College,* —— Ala. ——, 585 So.2d 866 (1991) (plaintiff who sued business college could not recover for breach of contract where she had not alleged any specific contrac-

tual undertaking that was breached); *Wickstrom v. North Idaho College*, 111 Idaho 450, 725 P.2d 155 (1986) (student who sued college where he enrolled in maintenance mechanic course could not recover for breach of contract where he had not alleged any specific contractual undertaking that had been breached).

■ Against the backdrop of these authorities, we now consider whether plaintiffs in the instant case have succeeded in pleading a cognizable cause of action against the Institute. We are persuaded by the reasoning employed by the many courts that have refused to recognize a general cause of action for educational malpractice, whether framed in terms of tort or breach of contract, where the allegation is simply that the educational institution failed to provide a quality education. It would be unwise to inject the judiciary into an area where it would be called upon to make judgments despite often insurmountable difficulties both in the formulation of an adequate standard of care and in finding a causal link between the alleged breach and the alleged damages.[2] Moreover, as the Commonwealth Court

2. One possible and manifestly undesirable consequence of recognizing an educational malpractice cause of action challenging the general quality of instruction given at an educational institution is well illustrated by the case of *Swidryk v. Saint Michael's Medical Center*, 201 N.J.Super. 601, 493 A.2d 641 (1985). In that case, a resident doctor who was sued for malpractice in turn sued the director of medical education at the hospital where plaintiff was a resident, contending that he was provided inadequate supervision during his residency and provided an inadequate medical educational environment. The court rejected the action, stating:

> To allow a physician to file suit for educational malpractice against his school and residence program each time he is sued for malpractice would call for a malpractice trial within a malpractice case. Creation of the tort of educational malpractice in this context would substantially increase the amount of time which a medical malpractice case takes to try.... The litigation explosion has limits and this is one area in which those limits should definitely be marked.

*Id.* at 608, 493 A.2d at 645. Similarly, in *Moore v. Vanderloo*, 386 N.W.2d 108 (Iowa 1986), a patient allegedly injured by a chiropractor sued both the chiropractor and the school where he was trained for breach of warranty and negligence. The Supreme Court of Iowa affirmed a grant of summary judgment for the school, citing all of the traditional reasons for not recognizing a claim for educational malpractice claim and further opining, in pertinent part:

has correctly indicated in its decisions in *Aubrey* and *Agostine*, the legislature has already enacted a statutory scheme for the regulation of public schools. We add that this scheme also extends to both private academic and trade and business schools. *See, e.g.*, Pa.Stat.Ann., tit. 24, §§ 6701–21 (Private Academic Schools Act) & tit. 24, §§ 6501–18 (Private Licensed Schools Act) (Supp.1991).

The concerns that are clearly appropriate in the case of an academic institution are equally raised by an attempt to inquire into the sufficiency of teaching methods at a trade or business school like the Institute. This court would be hard pressed to determine which of several alternative methods of teaching court reporting, or auto repair, or any other specialized business or trade skill was the appropriate one. Nor would it be an easy task to determine why a particular student failed to acquire certain skills after pursuing a course of instruction aimed at teaching those skills.

■ This is not to say, however, that it should be the policy of this Commonwealth to bar an action against a private trade school in every instance, no matter what the allegations of the complaint. We are convinced that the distinction drawn by the *Paladino* and *Malone* courts is valid. We can fathom no policy against permitting a cause of action for breach of contract or misrepresentation where, for example, a private trade school has made a positive representation that a certain curriculum will be offered and the student then finds that such curriculum is not available or where the school has asserted that it is accredited or

> ... if a cause of action for educational malpractice is recognized in Iowa, any malpractice case would have a malpractice action within it. For example, a doctor or attorney sued for malpractice by a patient or client might have an action over against his or her educational institution for failure to teach the doctor or attorney how to treat or handle the patient or client's problem. .... Further, if an educational malpractice claim is allowed against a professional school, could we logically refuse to recognize such a cause of action against an institution offering training courses for certain trades? For example, would a homeowner damaged by faulty wiring have a cause of action against the electrician's trade school? *Id.* at 115.

licensed to give a certain degree and it is later discovered that this is false. In such a case, the nature of the contractual undertaking and the breach thereof are clear and the plaintiff may be able to establish a cause of action against the offending institution. *Cf. Reimer v. Tien,* 356 Pa.Super. 192, 514 A.2d 566 (1986).

■ The difficulty with the instant lawsuit is simply that plaintiffs' complaint amounts to a general allegation of a lack of a quality education, without more. The complaint does not allege that there was any specific undertaking, in the student handbook and catalog or otherwise, to provide a specific course of instruction which was not provided. There is no allegation that any of the courses which the handbook included in the school's curriculum were not offered. Nor does the complaint allege that the representations made by the Institute to the effect that it was approved by the NSRA or PHEA were false. Finally, there is no pleading of any other specific misrepresentation or failure to perform a contractual undertaking. The sole allegation is that the instruction and instructors provided by the school were generally inadequate and of low quality. Such a complaint invites the court to enter into precisely the kind of generalized review of the entire course of instruction that so many other courts have wisely refrained from doing. Moreover, it presents obvious difficulties in determining whether appellants' withdrawal from the course and any damages they may have suffered were actually caused by deficiencies in the instruction given or, alternatively, by other factors unrelated to the Institute. Such a complaint is clearly insufficient.[3]

3. We need devote very little space to a rebuttal of appellants' argument that numerous jurisdictions have recognized a cause of action like that pleaded in appellants' complaint. In support of this contention, appellants provide citations to and one line descriptions of seven cases decided by other jurisdictions. Most of these cases are not even remotely apposite to the instant dispute and the others are not at all persuasive. For example, appellants refer us to *Olson v. Glens Falls Insur. Co.,* 5 Cal.Rptr. 233, 181 Cal.App.2d 165 (1960), as a case wherein students of a cosmetology school were permitted to sue the school for breach of contract. Appellants fail to mention, however,

Therefore, the trial court did not err in dismissing the complaint.

The order of the trial court is affirmed.

JOHNSON, J., files a concurring statement.

JOHNSON, Judge, concurring.

I join so much of the Majority Opinion as determines that the complaint is clearly insufficient and that the most distinguished trial judge, the Honorable R. Stanton Wettick, Jr., did not err in sustaining the preliminary objections and dismissing the complaint.

Judge Wettick found that, although the plaintiffs set forth certain educational standards in their complaint, there was no claim that any of those standards had been breached. He further found that the complaint contained numerous conclusory allegations that fell short of the specificity required in fact pleading. None of the fourteen specific paragraphs contained in the defendants' demurrer to the complaint raise the issue of common law educational malpractice.

I do not necessarily disagree with some of the observations in the Majority Opinion regarding the issue of a common law action for breach of contract against a private trade school. However, on the pleadings before us on this appeal, the complaint is so deficient that the action of the trial court may be affirmed without delving into whether Pennsylvania should recognize a general cause of action for

that in *Olson* the plaintiffs proceeded under a specific provision of the California Business and Professions Code requiring surety bonds for the protection of cosmetology school students. Clearly this case has no relevance here. Similarly, appellants refer us to *Dinberg v. Albert Murray, Inc.*, 331 N.Y.S.2d 65, 39 A.D.2d 622 (1972), a case in which the plaintiff student proceeded on a specific statutory cause of action under the New York General Business Law. Once again, we fail to see how this authority has any relevance to the action before us. Suffice it to say, the remaining cases cited by appellants also involve a variety of factual and legal scenarios which sufficiently distinguish them from the instant case as to make them irrelevant to our disposition of this case.

educational malpractice in matters involving private trade schools.

The Majority acknowledges in a footnote that the distinguished trial court specifically invited the plaintiffs to seek leave to amend their complaint in order to more specifically set forth both the alleged agreement between the parties and the breach. The plaintiffs have not sought such relief either from the trial court or from this court during the appeal. I am satisfied that the complaint which we are called upon to review does not set forth a cause of action upon which relief could be granted, regardless of whether Pennsylvania had in place a cause of action for educational malpractice.

This matter has come to us specially submitted on briefs, without oral argument. The complaint is deficient on its face. I would postpone consideration of the issues surrounding causes of action based upon educational malpractice until that problem is squarely presented. I therefore must concur in the result.