615 A.2d 71

**B. Timothy HARCOURT, D.C., Appellant,**

**v.**

**GENERAL ACCIDENT INSURANCE COMPANY,**
**Omni–Med Consultants, Inc.**

Superior Court of Pennsylvania.

Argued June 2, 1992.

Filed Oct. 5, 1992.

James J. Kutz, Harrisburg, for appellant.

Thomas E. Wood, Harrisburg, for Omni–Med, appellee.

Douglas B. Marcello, Harrisburg, for General Accident, appellee.

Before MONTEMURO, KELLY and CERCONE, JJ.

CERCONE, Judge:

■ This is an appeal from a final order sustaining preliminary objections filed on behalf of General Accident Insurance Company ("General Accident") and Omni–Med Consultants, Inc. ("Omni–Med"). The order dismissed with prejudice a complaint filed by plaintiff/appellant B. Timothy Harcourt, D.C.[1] For the reasons explained below, we vacate the order of the trial court and reinstate appellant's complaint.

Certain relevant facts in the instant case have been correctly set forth by the trial court as follows:

> The [plaintiff/appellant], B. Timothy Harcourt, D.C., is a doctor of chiropractic and is licensed to practice in Pennsylvania. On October 25, 1989, Brenda M. Wagner sustained injuries as the result of an automobile accident. On August 14, 1990, Ms. Wagner consulted the [appellant] for chiropractic treatment and a treating regimen was initiated. Dr. Harcourt billed General Accident Insurance Company ... which was Ms. Wagner's first party medical benefits insurance carrier. General Accident challenged the reasonableness and necessity of the treatment rendered by Dr. Harcourt and engaged ... [Omni–Med] Consultants, Inc. ... to perform a review of Dr. Harcourt's treatment pursuant to 75 Pa.C.S. § 1797. [Omni–Med] reviewed the matter and determined that the chiropractic care rendered by Dr. Harcourt was medically unnecessary. A request for reconsideration was filed with [Omni–Med by Dr. Harcourt].

Trial court opinion filed November 12, 1991 at 1–2. Omni–Med's denial notice to Dr. Harcourt properly informed him that he had a statutory right under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1701 *et seq.*, to request reconsideration of its decision. However, the

1. An order which sustains preliminary objections and dismisses a complaint is, of course, both final and immediately appealable. *See Bash v. Bell Telephone Co.*, 411 Pa.Super. 347, 601 A.2d 825 (1992).

denial notice also contained the information that Omni–Med intended to inject a non-statutory pre-requisite into the reconsideration process: Dr. Harcourt was required to submit four hundred fifty dollars ($450.00), payable in advance, before his claim would be reconsidered. *See* Appellant's complaint, Exhibit A (letter from Omni–Med Consultants, Inc. dated January 14, 1991).

The certified record discloses that appellant lodged a timely request for reconsideration with Omni–Med. However, true to its letter of January 14th, the request remained unprocessed by Omni–Med since Dr. Harcourt didn't pay the processing fee which Omni–Med had no statutory authority to impose. When neither Omni–Med nor General Accident would act upon his request for reconsideration, appellant instituted the litigation which is the subject of the instant appeal by filing a complaint in the Court of Common Pleas for Dauphin County.

Appellant's complaint, docketed March 5, 1991, requested declaratory and equitable relief stemming from the alleged failure of Omni–Med and General Accident to follow the mandate of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), *supra.* The complaint averred that the defendants/appellees had refused to comply with MVFRL's payment and peer review provisions. Appellant requested the trial court to direct the defendants/appellees to adhere to the requirements of MVFRL, provide him with an appropriate evaluation of his claim, and pay his provider fees during the pendency of the statutory review process. General Accident and Omni–Med responded by filing preliminary objections in the nature of a demurrer which were argued on October 2, 1991 before the Court of Common Pleas sitting *en banc.* The *en banc* panel of the Court of Common Pleas sustained the demurrer on November 12, 1991 and dismissed appellant's complaint with prejudice. The instant timely appeal followed.

Appellant's brief identifies four issues for our consideration:

I. Whether the trial court erred in granting [appellees'] preliminary objections in the nature of a demurrer.

[II]. Whether the trial court's dismissal of appellant's complaint must be reversed because Act 6 of 1990,[2] and section 1702 in particular, specifically require that an initial determination of a peer review organization, as that term is defined in section 1702, *be performed by a doctor licensed in the same profession* as the doctor whose treatment and services are subject to the review.

[III]. Whether, in the alternative, the Insurance. Department's regulations implementing the medical cost containment provisions of Act 6 of 1990, which were published in final form following the decision of the trial court, require the case to be remanded with instructions that the trial court determine whether the licensed health care provider [sic] who reviewed Dr. Harcourt's records (Alan Keiser, D.O.) has experience providing and prescribing the precise care subject to the review.

[IV]. Whether the trial court erred in concluding that an automobile insurance company may intentionally ignore the thirty day time limitation in which to challenge a provider's treatment under 75 Pa.C.S. § 1797(b)(3) and withhold payment merely because the peer review organization ultimately recommends denial of payment.

Appellant's brief at 3 (emphasis added). Appellee General Accident has provided a brief which responds in a point by point fashion to the claims presented by appellant. Appellee Omni–Med has directly responded to only one of appellant's issues. However, Omni–Med has elected to raise two new points via its brief:

2. "Act 6," P.L. 11, No. 6 enacted February 7, 1990, effectuates extensive modifications to the Motor Vehicle Financial Responsibility Law which comprises Chapter 17 of the Motor Vehicle Code. *See* 75 Pa.C.S. § 1701 *et seq*. At issue in the instant appeal are the medical cost containment savings provisions of Act 6 "which limit permissible charges by health care providers for the treatment or services rendered to automobile accident victims ... and provide for the utilization of peer review organizations (PROs) by property and casualty insurers for the purpose of evaluating the quality and medical necessity of treatment." 21 Pa.Bull. 5601 (November 30, 1991).

[1.] When the defendant in a declaratory judgment [action] is no longer engaged in the challenged activity, the issue is moot and any appeal should be dismissed.

[2.] The trial court lacked subject matter jurisdiction to hear [appellant's] case.

Brief filed on behalf of Omni–Med Consultants, Inc. at i. Appellant thereafter filed a reply brief which presents the following arguments:

[V.] The [Motor Vehicle Financial Responsibility Law ("MVFRL")], as amended, *requires a PRO to utilize a doctor of chiropractic to review treatment provided by a doctor of chiropractic at the initial level of review* when that initial determination recommends denial of payment.

[VI.] General Accident violated the MVFRL by withholding payment to Dr. Harcourt notwithstanding its failure to challenge Dr. Harcourt's treatment to peer review within thirty days from the date it received each bill for treatment.

[VII.] [Omni–Med] waived its ability to secure removal from this litigation by failing to make the proper post-trial motion for substitution of parties.

[VIII.] [Omni–Med] waived any challenge to the trial court's jurisdiction.

Appellant's reply brief at i (emphasis added).

We shall first address Omni–Med's assertion that the Court of Common Pleas lacked subject matter jurisdiction to hear the complaint filed by Dr. Harcourt. Contrary to appellant's argument, the absence of a timely objection by Omni–Med to the trial court's subject matter jurisdiction is immaterial. An objection to jurisdiction over subject matter may never be lost by estoppel, consent, or waiver. *Drummond v. Drummond*, 414 Pa. 548, 551, 200 A.2d 887, 888 (1964). *See also Civil Service Com'n v. Kuhn*, 85 Pa.Commw. 85, 89, 480 A.2d 1327, 1329 (1984) (subject-matter jurisdiction cannot be conferred by the consent of the parties nor can it be waived as an issue). Although Omni–Med clearly has the right to challenge the court's jurisdiction, we find that Court

of Common Pleas exercised proper subject-matter jurisdiction in this case because of the nature of appellant's claim.

Since in this case the insurer, General Accident, and the peer review organization, Omni–Med, refused to act on appellant's petition for reconsideration, appellant petitioned the trial court for two types of relief: first, he sought a court order compelling General Accident and Omni–Med to comply with the statutory provisions of MVFRL; and second, he requested the court to provide declaratory relief in the form of an interpretation of 75 Pa.C.S. § 1797(b)(3) (Pending determination by a PRO).[3] Appellee Omni–Med has objected to the trial court's subject-matter jurisdiction on the grounds appellant has not exhausted his statutory remedies under MVFRL. We agree with Omni–Med that a statutory remedy is preferred over a common law remedy. 1 Pa.C.S. § 1504. Moreover, where there is a clear and adequate statutory remedy, that remedy is exclusive. *See, e.g., Commonwealth Department of Environmental Resources v. Williams,* 57 Pa. Commw. 8, 11, 425 A.2d 871, 872–73 (1981). In the instant case, however, we find that the governing statute provides no explicit "clear and adequate" remedy for the failure or deliberate refusal of either a provider or a PRO to abide by MVFRL's reconsideration provisions.

Here, the provider had exhausted his remedies under MVFRL: he had timely requested PRO reconsideration. Appellees' refusal to provide the statutory remedy left appellant with no recourse but to invoke the aid of a court of common pleas. To hold otherwise would be tantamount to ruling that our law permits an insurer to thwart the plain object of § 1797 by presenting a provider's claim to a PRO and then tabling any subsequent request for reconsideration of the PRO's ruling. Omni–Med's reading of the statute would deprive an aggrieved provider of any means to obtain redress in the event an insurer or a PRO either refused or neglected to perform the reconsideration plainly required by § 1797(b)(2). The Legislature can never have intended such a patently

3. Section 1797(b)(3) is set forth *infra* in conjunction with our discussion and resolution of appellant's allegations of trial court error.

absurd termination of a provider's rights. *See Crosby by Crosby v. Sultz*, 405 Pa.Super. 527, 541–42, 592 A.2d 1337, 1344–45 (1991) (courts should not construe statutes so as to promote or further absurd results).

▋ Omni–Med also argues that appellant's claims are moot, at least as to Omni–Med. Careful consideration of this contention discloses that under the guise of a general "mootness" argument, Omni–Med is actually seeking dismissal as a party from the instant litigation. The linchpin of this argument is an averment that appellee Omni–Med Consultants, Inc. entered into an asset purchase agreement on November 8, 1991 by which it sold the assets of its PRO business to an allegedly unrelated entity fortuitously called "Omni–Medicorp, Ltd." Appellee Omni–Med therefore theorizes that appellant's claims are moot as to it since it is "no longer in the PRO business" and "any issue as to the manner in which it [formerly] conducted its business is moot." Appellee's brief at 10. Unfortunately, we can find no indication in the certified record that Omni–Med either presented this mootness claim to the trial court or petitioned to be removed as a defendant. Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P., Rule 302(a), 42 Pa.C.S.

Having disposed of these initial procedural questions, we may now address appellant's substantive claim: that the trial court erred in granting appellees' preliminary objections in the nature of a demurrer. In support of this contention, appellant has presented three hypotheses. In the first and second instances, appellant claims (in the alternative): (1) that it was error on the part of the trial court to grant appellee's preliminary objections in the nature of a demurrer because MVFRL requires the initial determination of a PRO to be performed by a medical practitioner licensed in the same profession as that of the treating practitioner whose services are subject to the reviewing process; or (2) that Insurance Department regulations which were implemented after the trial court's decision was reached mandate initial PRO review by a medical practitioner licensed identically to the provider. Appellant

also argues that it was error for the trial court to conclude that an automobile insurance company may ignore the thirty day limitation period provided by 75 Pa.C.S. § 1797(b)(3) during which the carrier may challenge a provider's treatment.

█ Our scope of review from an order sustaining preliminary objections in the nature of a demurrer and dismissing a complaint is plenary. *Cavaliere v. Duff's Business Institute,* 413 Pa.Super. 357, 364, 605 A.2d 397, 400 (1992). The role of this court is to ascertain "whether the trial court correctly determined that, taking as true all properly pleaded material facts and disregarding all pleaded conclusions of law, under no circumstances will the law permit recovery on the complaint." *Id.* (citing *Pawlowski v. Smorto,* 403 Pa.Super. 71, 588 A.2d 36 (1990) and *Doe v. Dyer–Goode,* 389 Pa.Super. 151, 566 A.2d 889 (1989), *allocatur denied,* 527 Pa. 587, 588 A.2d 509 (1990)).

A demurrer can only be sustained where the complaint is clearly insufficient to establish the pleader's right to relief. For the purpose of testing the legal sufficiency of the challenged pleading[,] a preliminary objection in the nature of a demurrer admits as true all well-pleaded, material, relevant facts, and every inference fairly deducible from those facts. The pleader's conclusions or averments of law are not considered to be admitted as true by a demurrer. Since the sustaining of a demurrer results in a denial of the pleader's claim or a dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted. If the facts as pleaded state a claim for which relief may be granted under any theory of law then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected.

*Bash v. Bell Telephone Co.,* 411 Pa.Super. 347, 354–55, 601 A.2d 825, 828–29 (1992) (citations omitted).

█ Appellant has advanced alternative theories in support of his position that he was entitled to review by a member of his own profession during the initial phase of the PRO pro-

cess. The thrust of his first argument is that the peer review mechanism mandated by 75 Pa.C.S. § 1797 cannot be interpreted in isolation, but can be properly understood only when read in *pari materia* with § 1702 which defines the phrase "Peer Review Organization." Appellant is quite correct that § 1797 itself contains no discussion as to the professional qualifications required of the "peer" who performs the *initial* review:

> **Peer review plan.**—Insurers shall contract jointly or separately with any peer review organization established for the purpose of evaluating treatment, health care services, products or accommodations provided to any injured person. Such evaluation shall be for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary. An insurer's challenge must be made to a PRO within 90 days of the insurer's receipt of the provider's bill for treatment or services or may be made at any time for continuing treatment or services.

75 Pa.C.S. § 1797(b)(1). However, inspection of MVFRL demonstrates that the Legislature has supplied the pertinent explication for § 1797 via § 1702:

> **"Peer Review Organization" or "PRO."** Any Peer Review Organization with which the Federal Health Care Financing Administration or the Commonwealth contracts for medical review of Medicare or medical assistance services, or any health care review company, approved by the commissioner, that engages in peer review for the purpose of determining that medical and rehabilitation services are medically necessary and economically provided. *The membership of any PRO utilized in connection with this chapter shall include representation from the profession whose services are subject to the review.*

*Id.* § 1702 (emphasis added). This definition clearly requires that a PRO must include representation from the same profession under review whenever a PRO is employed in connection with *any* section of the Motor Vehicle Financial Responsibility Law. It would be absurd to interpret this statutory provision

to mean that the PRO need only retain such qualified individuals as "window-dressing" but need not employ them in the actual review process. As previously stated, courts should not construe statutes so as to promote absurd results. *Crosby by Crosby v. Sultz*, 405 Pa.Super. at 541–42, 592 A.2d at 1344–45.

Appellant has correctly noted that the proper distinctions between the initial and reconsideration phases of the PRO process concern the status difference between a reviewer who is a member of the provider's "profession" and one who is a member of the provider's professional "specialty." MVFRL requires that the initial PRO evaluation need only be performed by a member of the provider's profession. However, any reconsideration conducted under the auspices of § 1797 must be handled by a person who belongs not only to the same *profession,* but is also a practitioner in the same *specialty* as the provider.

> **PRO reconsideration.**—An insurer, provider or insured may request a reconsideration by the PRO of the PRO's initial determination. Such a request for reconsideration must be made within 30 days of the PRO's initial determination. If reconsideration is requested for the services of a physician or other licensed health care professional, then the reviewing individual must be, or the reviewing panel must include, an individual in the same *specialty* as the individual subject to review.

75 Pa.C.S. § 1797(b)(2) (emphasis added). While we agree with General Accident that the Legislature provided no explicit requirement for a particular form of initial PRO evaluation in § 1797(b) itself, we cannot agree that this constitutes a failure on the part of the Legislature. Simply put, the definitions of § 1702 control peer review under § 1797(b). That § 1797(b)(2) explicitly sets forth a more stringent form of evaluation for the reconsideration phase cannot be interpreted to mean that the initial PRO phase is unregulated in light of the clear language of § 1702, *supra.*

Appellant and appellee General Accident have presented lengthy and complex arguments regarding the proper professional qualifications which a PRO reviewer must possess.

However, we need not go into detail regarding these claims because it is beyond cavil that words and phrases in a statute must be construed according to their common and approved usage. 1 Pa.C.S. § 1903(a). The term "profession" is defined by Webster as "the collective body of persons engaged in or practicing a particular calling or vocation." Webster's New Universal Unabridged Dictionary 1437 (J. McKechnie 2d ed. 1983). "Specialist," however, has a much more restrictive definition. A specialist is "a person who devotes himself [or herself] to a particular branch of a profession, art, or science; a person who has studied and acquired specific knowledge on some particular subject; as, oculists and aurists are specialists as regards surgery." *Id.* at 1741. In Pennsylvania, chiropractic licensure and practice is regulated by the Chiropractic Practice Act ("the Act"), 63 P.S. § 625.101 *et seq.* The provisions of the Act explicitly acknowledge that chiropractic is a profession which is further subdivided into specialty practices. Under Pennsylvania law, a practitioner of chiropractic may hold himself out as a "specialist," but only after obtaining postgraduate certification in the avowed specialty. *Id.* § 625.506(a)(17). *See also id.* § 625.301 (defining the term "chiropractor").

Applying these legal definitions to the present case, it emerges that chiropractors, the collective body of persons engaged as chiropractic practitioners, are exponents of a profession; but without postgraduate certification, chiropractors are not "specialists." Under any reasonable interpretation of §§ 1702 and 1797(b) of MVFRL, appellant was entitled to an initial review by a member of his own profession, although not to review by a member of a chiropractic specialty, when the case was first submitted to the PRO. We therefore conclude that appellant was entitled to consideration by a chiropractor during the initial phase of the PRO review.[4]

4. Having reached the above conclusion, we need not consider appellant's contentions regarding certain federal peer review regulations or those contained in Pennsylvania's Peer Review Protection Act, 63 P.S. § 425.1 *et seq.,* which allegedly support appellant's interpretation of MVFRL. Nor will we address the merits of appellant's alternative

Appellant's final allegation is that the trial court erred in permitting General Accident to willfully disregard the thirty day limitation period during which an insurance carrier may challenge a provider's treatment without first paying the provider. Appellant believes that this error was compounded when the trial court disregarded the fact that the insurance carrier and the PRO acted in concert to impose non-statutory hurdles to the review/reconsideration process in the form of a $450 fee levied against Dr. Harcourt before Omni–Med would reconsider the claim. From the pleadings in the certified record, it appears to be appellees' position that appellant's request for reconsideration was untimely filed because he refused to pay Omni–Med's reconsideration fee.

In this situation, we are inclined to agree with certain recent comments by the Honorable R. Stanton Wettick of the Court of Common Pleas of Allegheny County which are highly apropos of the instant case:

A PRO is not a neutral body. While a PRO cannot be owned by or be otherwise affiliated with the insurance company (31 Pa.Code § 68.3(d)), the law provides for the insurance company to select the PRO that will review the claim. The insurance company initially pays the PRO for its services. The insured plays no role in the selection process. Obviously, PROs have a strong financial incentive to appear fair in the eyes of the insurance company. Otherwise, the insurance company will take its business elsewhere. On the other hand, the PRO is not as concerned with how the insured views the PRO because this will not affect its future business. Consequently, the PRO does not have the characteristics of an independent body for which the Legislature would seek judicial deference.

*Lehman v. State Farm Insurance Companies,* 140 P.L.J. 78, 82 (1992). We can find no *statutory* provision in MVFRL which supports Omni–Med's claim for a reconsideration fee to

argument concerning the final regulations promulgated by the Insurance Department.

be paid by the medical provider.[5] However, MVFRL does contain the following language dispositive of appellant's challenge:

> **(3) Pending determinations by PRO.**—If the insurer challenges within 30 days the receipt of a bill for medical treatment or rehabilitative services, the insurer need not pay the provider subject to the challenge until a determination has been made by the PRO. The insured may not be billed for any treatment, accommodations, products or services during the peer review process.

75 Pa.C.S. § 1797(b)(3). We agree with appellant that section 1797(b)(3) clearly requires an insurance carrier to pay the provider any disputed amounts for treatment which has not been challenged until thirty-one (31) or more days after the carrier receives the bill for the treatment. Under the plain terms of subsection (b)(3), an insurer *must* pay a provider if the insurer has not commenced the PRO review process within thirty days.

The trial court actually agreed with appellant's interpretation of the statute. However, the trial court considered the point to be moot because the initial PRO review favored General Accident:

> We agree with [appellant] General Accident that since a decision has been rendered by the initial peer review panel

---

**5.** During the comment period prior to promulgation of final administrative regulations by the Insurance Department, appellee Omni–Med recommended that the requesting party (presumably the medical provider in most instances) should bear the cost of PRO reconsideration. 21 Pa.Bull. 5606 (November 30, 1991). This was not the position actually adopted by the Department. The final administrative regulations provide that the insurance carrier "shall make up-front payment for reconsideration to the PRO, but that the losing party shall ultimately pay for the reconsideration." *Id.;* codified at 31 Pa.Code § 69.52(h). The Insurance Department established no fee schedule or formal fee structure for reconsideration because MVFRL contemplates that *insurance carriers* and *PROs* will contract jointly for the purpose of PRO review. 21 Pa.Bull. 5606. As a cost control measure, the charge for reconsideration may not exceed the charge for the initial review paid by the insurance carrier. *Id.;* 31 Pa.Code § 69.52(h). It is an unfortunate fact that the final administrative regulations simply were not promulgated by the Insurance Department in time to guide Omni–Med in its approach to Dr. Harcourt's claim.

that the treatment was medically unnecessary, Count II of the complaint is moot and should be dismissed. Although General Accident should not have withheld payment pending the PRO's determination, it is now irrelevant that payment was withheld since, in the interim, the initial peer review panel determined that treatment was medically unnecessary. If, upon reconsideration, the PRO determines, or if on appeal this Court determines[,] that the services were medically unnecessary, [sic] the provider will be paid for his services plus interest at 12% per year on any amount withheld by an insurer pending PRO review. 75 Pa.C.S. § 1797(b)(5).

Trial court opinion at 6–7.[6] We find the trial court's mootness ruling inapplicable to the present case as the initial resolution of appellant's claim was reached via a flawed and faulty process which cannot be permitted to stand. It is irrelevant that a plaintiff may tack an interest charge onto his award if he ultimately achieves a favorable result under the statute's reconsideration provision. The plain terms of subsection (b)(5) required General Accident to pay Dr. Harcourt for the treatment rendered to Ms. Wagner during the initial review

**6.** The subsections to which the trial court refers contain the following language:

**PRO determination in favor of provider or insured.**—If a PRO determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12% per year on any amount withheld by the insurer pending PRO review.
75 Pa.C.S. § 1797(b)(5);

**Determination in favor of insurer.**—If it is determined by a PRO or court that a provider has provided unnecessary medical treatment or rehabilitative services or merchandise or that future provision of such treatment, services or merchandise will be unnecessary, or both, the provider may not collect payment for the medically unnecessary treatment, services or merchandise. If the provider has collected such payment, it *must return the amount paid plus interest* at 12% per year within 30 days.
*Id.* § 1797(b)(7) (emphasis added). Both the trial court and appellees seem to misunderstand the import of subsection (b)(7) as they appear to believe that the provider would be under no obligation to return payments made by the insurer prior to a determination unfavorable to the provider.

process if the matter was not referred to the PRO within thirty days of Dr. Harcourt's billing.

We see no indication in the certified record for the instant case that appellant was ever notified that General Accident had commissioned a peer review until he received the notice of the unfavorable evaluation by Omni–Med. The certified record is silent regarding the date on which General Accident referred the matter to Omni–Med. Since the record certified to this court provides no information concerning this factual matter crucial to resolution of appellant's third claim, we must remand the case to the trial court so that it may determine the date on which General Accident submitted appellant's claim to Omni–Med for initial PRO consideration. If this referral occurred more than thirty days after Dr. Harcourt originally submitted his claim, then he is entitled to payment of his fee plus interest as of the original submission date. *See* 75 Pa.C.S. § 1797(b)(3). In this event, the trial court shall enter an order directing General Accident to pay Dr. Harcourt the total amount of his claim plus the applicable interest.[7] While the question of General Accident's initial referral date is before the trial court, Omni–Med may petition for removal as a defendant in this litigation on grounds of mootness.

After the trial court has conducted the necessary fact-finding and made its ruling regarding Dr. Harcourt's right to payment under § 1797(b)(3), General Accident may elect either to pay Dr. Harcourt and let the matter rest, or in the alternative, may proceed with a new peer review. Should General Accident initiate a peer review process on remand, Dr. Harcourt's claim may only be referred to a new peer review organization which is unconnected in any way with appellee Omni–Med Consultants, Inc. The new PRO may not be a successor in interest to Omni–Med Consultants, Inc. If General Accident elects to pursue a peer review, the matter shall be submitted for an initial review to be conducted by a

7. Should a PRO ultimately determine that Dr. Harcourt's services were medically unnecessary, he will be required to return this sum to General Accident. *See* 75 Pa.C.S. § 1797(b)(7).

chiropractor in accordance with the foregoing opinion.[8] Should the initial PRO determination favor General Accident, Dr. Harcourt will have the right to request reconsideration before a chiropractic specialist. Any reconsideration fee charged may not exceed the initial fee charged by the PRO to General Accident. The reconsideration fee must be paid by General Accident, but ultimately shall be borne by the party against whom the reconsideration determination is made.

The order of November 13, 1991 is vacated and appellant's complaint is reinstated. The case is remanded with instructions. Jurisdiction is not retained.

---

8. This court is cognizant of the fact that the Insurance Department's administrative regulations directly apply only to insurer payments to providers for services rendered on and after November 30, 1991. 31 Pa.Code § 69.2. However, the parties to the instant litigation need no longer "operate in the dark" as to the proper construction and effect of 75 Pa.C.S. § 1797 because their peer review process may be fully informed by reference to the final administrative regulations set forth at 31 Pa.Code § 69.52.