Department of Transportation, Commonwealth of Pennsylvania (PennDOT), Plaintiff *v.* Bethlehem Steel Corporation and Sanders and Thomas, Inc., Defendants and Tensorex Company, Inc., et al., Additional Defendants.

Argued September 10, 1976, before Judges CRUM-
LISH, JR., WILKINSON, JR. and ROGERS, sitting as a
panel of three.

*Stuart J. Moskovitz,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for plaintiff.

*William A. VanBrunt,* with him *Edward C. First, Jr., McNees, Wallace & Nurick,* and, of counsel, *Curtis H. Barnette* and *Howard A. Feldman,* for defendant, Bethlehem Steel Corporation.

*Joseph P. Hafer,* with him *James K. Thomas,* and *Metzger, Hafer, Keefer, Thomas and Wood,* for defendant, Sanders and Thomas, Inc.

*Henry W. Rhoads,* with him *J. Bruce Walter,* and *Rhoads, Sinon & Reader,* for additional defendants.

OPINION BY JUDGE CRUMLISH, JR., January 18, 1977: The Pennsylvania Department of Transportation (PennDOT) originated this litigation by filing a com-

plaint in trespass and assumpsit against Bethlehem Steel Corporation (Bethlehem) and Sanders and Thomas, Inc. (Sanders) in connection with the buckling of a structural steel member of a bridge improvement built for PennDOT in the City of Bethlehem (City). Both Defendants filed preliminary objections to this complaint and Bethlehem filed a first third-party complaint and amended complaint against No. 1 Contracting Corporation of Delaware (No. 1) and Tensor Engineering Company. Bethlehem later filed a second amended third-party complaint against No. 1 and Tensorex Engineering Company of New York and Tensorex Engineering Company of Florida (Tensorex). Tensorex in turn has filed preliminary objections to Bethlehem's second amended complaint. To date No. 1 has filed no responsive pleading to Bethlehem's second amended complaint.

In attempting to frame the posture of this case, we note that PennDOT's original complaint alleges that on or about March 31, 1967, PennDOT, the City, and Bethlehem entered into a written agreement whereby Bethlehem was to engage the services of a consulting engineer who would furnish design plans and drawings for reconstruction and improvement of Legislative Route 48096, more specifically known as the New Street Bridge and its approaches. The consulting engineer obtained by Bethlehem was Sanders. It is further alleged that pursuant to their various contractual obligations, Bethlehem and Sanders collaborated in producing a design of a new slant leg rigid frame steel bridge. Tensorex enters this scenario as consultant to Bethlehem, employed to aid. in the preparation of the design drawings ultimately used by Bethlehem. More specifically, Tensorex was to have done certain detail work for Bethlehem, take drawings and specifications prepared by Bethlehem and Sanders, and prepare these drawings and speci-

fications for use by Bethlehem in fabricating the steel to be provided in the construction of the bridge. Bethlehem's second amended complaint alleges that the detail work done by Tensorex was defective in that it omitted and relocated certain brackets (web stiffeners) called for in the basic Sanders plan.

Bethlehem's other second amended complaint related to No. 1. It is alleged that following advertising of the bid proposal which contained specifications received from the Bethlehem-Sanders design plans, PennDOT awarded the contract to the successful low bidder, No. 1, for construction of the improvements. Allegations are made that No. 1's failure to use workmanable techniques in pouring concrete in a manner which would avoid overstressing of the bridge subjects No. 1 to liability.

For purposes of this opinion we shall dispose of both the preliminary objections lodged against the original complaint and those outstanding against Bethlehem's second amended third-party complaint.

### PennDOT v. Bethlehem—Bethlehem's Preliminary Objections

1. Initially, Bethlehem argues that in Count I, PennDOT alleges Sanders became the agent of Bethlehem for the preparation of a suitable and safe design of a bridge structure, that Bethlehem and Sanders collaborated in producing a design for the bridge, and further that PennDOT has failed to aver any facts in support of its conclusion that Sanders was Bethlehem's agent and that the parties collaborated in the bridge design as required by Pa. R.C.P. No. 1019(a).

As we recently said in *General State Authority v. The Sutter Corporation*, 24 Pa. Commonwealth Ct. 391, 395, 356 A.2d 377, 381 (1976):

Rule 1019(a) requires fact pleading. 'The purpose of [1019(a)] is to require the pleader

to disclose the ''material facts'' sufficient to enable the adverse party to prepare his case.' A complaint therefore must do more than 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' It should formulate the issues by fully summarizing the material facts. 'Material facts' are 'ultimate facts,' i.e., those facts essential to support the claim. Evidence from which such facts may be inferred not only need not but should not be alleged. . . . Allegations will withstand challenge under 1019(a) if (1) they contain averments of all of the facts the plaintiff will eventually have to prove in order to recover, and (2) they are 'sufficiently specific so as to enable defendant to prepare his defense.'

With the realization that GSA's allegations will withstand a 1019(a) scrutiny only if they contain averments of all of the facts that plaintiff will eventually have to prove, and they are sufficiently specific to enable a defense to be prepared, we must determine whether the facts as pleaded are material in relation to the posture of the parties as determined by the build-up guarantee. (Citations omitted.)

We have reviewed the disputed allegations in light of Pa. R.C.P. No. 1019(a) and conclude that the allegations of agency between Bethlehem and Sanders, and those establishing the working relationship between Bethlehem and Sanders, are sufficient to withstand the test of 1019(a). PennDOT has pleaded material facts establishing the contractual relationship of the parties and their respective rights and duties incident thereto, and those facts pleaded do enable Bethlehem to prepare a defense.

Next, Bethlehem contends that the *ad damnum* clauses of Counts I and II fail to set forth when each

of the items of work listed in the Plaintiff's complaint were paid as required by Pa. R.C.P. No. 1019(a) and (f), and further, objection is made to the *ad damnum* clause of Count II in that it fails to distinguish between those items of damage which arose from negligence of omission or relocation of the web stiffeners and those which arose as a result of the negligence in selection of a design engineer. The damages as pleaded are as follows:

| "PAYEE | ITEM OF WORK | COST |
|---|---|---|
| No. 1 Contracting Corporation of Delaware | Work performed to prop distressed West Bridge Knees | $ 47,549.81 |
| No. 1 Contracting Corporation of Delaware | Modification to East Bridge Frames A, B and C Knee strengthening | 75,104.39 |
| No. 1 Contracting Corporation of Delaware | Temporary X-bracing Frame A North side Pier No. 7 and North and South sides Pier No. 8 West Bridge | 19,700.89 |
| No. 1 Contracting Corporation of Delaware | Modification to East Bridge Frame B girder | 12,195.00 |
| No. 1 Contracting Corporation of Delaware | Restoration and modification of West Bridge Frame B Knees | 484,362.90 |
| No. 1 Contracting Corporation of Delaware | Additional Bond and Insurance Premium | 5,655.28 |
| No. 1 Contracting Corporation of Delaware | Additional Inspector Office Rental | 3,600.00 |
| No. 1 Contracting Corporation of Delaware | Additional cost for Railroad Protection | 1,236.58 |
| No. 1 Contracting Corporation of Delaware | Escalation to items of [sic] for brick sidewalk, granite curb and enclosure building, due to delay in completion of the project | 21,528.86 |

| | | |
|---|---|---|
| No. 1 Contracting Corporation of Delaware | Escalation to labor rates and benefits due to delay in completion of the project | 63,657.47 |
| Gannett, Fleming, Cord-dry and Carpenter, Inc. | Engineering Fees | 95,884.64 |
| | Departmental Personnel Inspection Cost | 12,938.69 |
| | TOTAL | $843,414.51" |

Clearly, Pa. R.C.P. No. 1019(f) requires that special damages be pleaded with specificity. We hold that the prior list meets that specificity requirement,[1] and that the damages evidenced by payments to the Gannett Firm are supported by pleaded facts in other averments as required by Pa. R.C.P. No. 1019(a). Paragraphs 9 and 10 of the complaint do in fact detail the necessity to hire another consulting engineer for corrective analysis following the buckling of the bridge. We note that damages claimed to be due as a result of increased payments to No. 1 are not documented in the complaint and should, upon PennDOT's amendment, be stated with greater specificity.

Further, we agree with Bethlehem that the complaint should more artfully state those damages which arose as a result of alleged omissions by Bethlehem versus those which arose as a result of alleged improper hiring of Sanders. This, too, should be the subject matter of an amendment by PennDOT, for the complaint is devoid of factual averments supportive of such a distinction.

We agree with Bethlehem that PennDOT should state with greater specificity its basis for a claim of damage for additional bonding and insurance premiums paid to No. 1. The bare allegations of these

---

[1] We shall expand upon the notion in failure to specify damages in the Sanders' preliminary objection portion of this opinion.

damages without pleading of facts which would tend to establish liability on the part of Bethlehem for such damages does not permit Bethlehem to mount a sufficient defense, and as such should be the subject of amendment. Likewise, PennDOT must amend to state facts supportive of its damage claim for additional inspection office rentals and costs for railroad protection. Rule 1019(a) mandates such a result.

Bethlehem next contends that PennDOT has failed to attach a copy of its contract with No. 1 as required by Pa. R.C.P. No. 1019(h). We recognized the necessity for such exhibits in *General State Authority v. Lawrie and Green*, 24 Pa. Commonwealth Ct. 407, 356 A.2d 851 (1976), and it is clear that this rule dictates inclusions when the claim or defense set forth therein is based on a writing. Here, PennDOT does not seek to sue either Bethlehem or Sanders on the basis of its contract with No. 1, the successful bidder. We observe that the contract let to No. 1 was the final embodiment of specifications derived by Bethlehem's co-venturer Sanders with the aid of Tensorex, but the essence of the cause of action against Bethlehem is not the contract between PennDOT and No. 1 and therefore need not be specifically set forth. If PennDOT had failed to append the contract between itself, the City and Bethlehem, wherein the original consulting arrangement was established, a 1019(h) objection might be proper, but that contract was appended to the complaint and serves as the basis for liability upon which PennDOT is proceeding.

And finally, we dismiss Bethlehem's contention that PennDOT has failed to plead negligence against Bethlehem as required by 1019(a). More specifically, PennDOT's complaint states:

"12. Besides its contractual obligation as design consultant to PennDOT, under Agreement No. 38062, executed on March 31, 1967, the defendant, Bethlehem

Steel Corporation, through its General Service Division located in Pottstown, Pennsylvania, was connected with the design and construction of the New Street Bridge in still another capacity, *i.e.*, the Steel Fabrication Division was the Steel Fabrication and Erection Sub-Contractor to the General Contractor, No. 1 Contracting Corporation of Delaware.

"13. In its second role or capacity, the defendant, Bethlehem Steel Corporation (Steel Fabrication Division) either intentionally or inadvertently omitted and relocated certain web 'stiffeners' called for in the original design plans, and in that request, jeopardized the function of the structure under service loads.

"14. The aforementioned acts of negligence (as specified in paragraph 13 above) were coupled with the Defendant's negligence in selecting a Design Consultant, Sanders and Thomas, Inc. who prepared and submitted a design for a type bridge which required rigorous strength analyses of the various structural members and components in this bridge and the consultant's analysis proved to be insufficient to pinpoint the weaknesses in the bridge design."

Given the notice pleading accepted in our rules, this objection is without merit.

2. Bethlehem has demurred to PennDOT's complaint contending that allegations by PennDOT that Bethlehem breached Contract 38062 by furnishing or causing to be furnished to PennDOT inadequate and defective bridge design, cannot stand in the face of clear contractual language stating that "the plans for the bridge and its approaches shall conform to the Pennsylvania Highway Department's specifications and *the engineering thereof shall be at all times under the supervision of the Pennsylvania Department of Highways.*" (Emphasis in original.) (Department of Highways was the predecessor of PennDOT in this action.)

We are unable to accept Bethlehem's proposition that this clause in any way bars PennDOT from proceeding in assumpsit on the basis of Contract 38062. It is true that PennDOT retained supervisory rights over specifications submitted by consultant Bethlehem. But, the very reason for the hiring of Bethlehem as consultant in this matter was a recognition by PennDOT of Bethlehem's expertise and ability to produce designs which PennDOT was unable to do. This is not to say that PennDOT, and its engineers, did not know the content of the design plan submitted or the specifications that would most likely be produced in the design plans. Weighing the role of each party to the contract, we are unable to determine upon preliminary objection that this clause forecloses all contractual liability for Bethlehem.

3. As previously stated, examination of Count II (negligence) pleaded by PennDOT established a cause of action in negligence. Assuming all well-pleaded facts in that count as true, we cannot say that PennDOT has not stated a cause of action for negligence. It is specifically averred that Bethlehem "either intentionally or inadvertently omitted or relocated web 'stiffeners' called for in the original design plan." (This applies to Bethlehem as Steel Fabricator in this case rather than as consultant on the original design plans.) In these circumstances, we must dismiss Bethlehem's demurrer to Count II.

4. Bethlehem next lodges objection to PennDOT's complaint on the grounds that PennDOT is barred by its own negligence from asserting an action in trespass (negligence) in Count II with respect to selection of a bridge designer. In essence, we understand this objection to mean that given PennDOT's duty under the contract with Bethlehem to supervise design plans eventually submitted, PennDOT's allegation that the design plans were so deficient as to now warrant

litigation must mean that PennDOT too failed in its contractual duties to supervise and oversee design plans submitted to it. Bethlehem now argues this failure on the part of PennDOT is tantamount to contributory negligence and as such bars PennDOT's cause of action.

This understanding is misguided at this posture of the litigation. Proof of contributory negligence is a matter for trial and has no place in well-pleaded preliminary objections.

### PennDOT v. Sanders
### Sanders' Preliminary Objections

1. Motion for a More Specific Complaint.

As we have said earlier in this opinion, we hold that the averments by PennDOT of agency between Bethlehem and Sanders are pleaded with sufficient clarity. Like Bethlehem, Sanders has lodged a 1019 (a) objection to this averment by PennDOT. At this juncture, we note that given the pleading of the agency in proper 1019(a) form, Sanders and/or Bethlehem are in a position to either admit or deny agency, and further, either Defendant can explain and expand the admission or denial by way of new matter. For these reasons, we will not order amendment as to agency.

Sanders also poses a 1019(h) objection, to wit: PennDOT's complaint bases its contention that the bridge design in question was defective upon a report of the firm Gannett, Fleming, Corddry & Carpenter, Inc., and as such, the writing (report) should be appended to the complaint by way of exhibit. Unlike the 1019(h) objection of Bethlehem, we sustain this objection, for liability, if imposed upon Sanders, would indeed be based at least in part upon this report.

Next, Sanders frames a 1019(f) objection. That rule states:

*Averments of time, place* and items of special damage shall be specifically stated. (Emphasis added.)

Sanders has briefed numerous objections relating to the deficiency of the complaint in this regard. We need not detail each one, and for purposes of this opinion, we will simply state the disposition of each objection based on our review of the complaint. Penn-DOT will amend its complaint to state with a greater degree of specificity the following:

(a)   exact nature of repairs, *i.e.*, time and place of repairs undertaken;

(b)   elements of damage shall be stated with greater particularity as stated in the Bethlehem portion of this opinion;

(c)   specifying dates of bond and insurance premiums, inspector office rental, and interest as well as factual averments supporting each allegation.

2.   Demurrer

Sanders has demurred to Count III of the complaint in which PennDOT has sought to maintain an action against Sanders in assumpsit, upon the theory that PennDOT was a "third party beneficiary" of the Sanders-Bethlehem contract because the work product of that contract (design plans) was intended for Penn-DOT use. PennDOT's complaint admits of no privity of contract between Sanders and PennDOT, and proceeds upon the basis that it can assert rights greater than those of an incidental beneficiary.

Paragraph 17 of the PennDOT complaint avers:

"17.   From the time when the defendant, Sanders and Thomas, Inc., agreed with the defendant, Bethlehem Steel Corporation, to prepare a design, plans, drawings and specifications for the 'New Street Bridge,' it was fully aware that this work was to be performed for ultimate submission to the Pennsylvania Department of Highways, for their use, *and*

*that although there was no direct privity of contract between PennDOT and Sanders and Thomas, Inc., that PennDOT was actually a 'third party beneficiary' to whatever agreement that existed between Bethlehem Steel Corporation and Sanders and Thomas, Inc. in this respect;* and that Sanders and Thomas, Inc.'s contractual obligation to PennDOT as well as to Bethlehem Steel Corporation was 'breached' when it submitted a defective bridge design to PennDOT which resulted in the buckling of a structural member of the bridge in question on or about June 27, 1970." (Emphasis added.)

Any reliance upon the concept of necessity of privity by Sanders as a condition precedent to a recovery in contract is unwarranted, for it is clear that privity of contract in third-party beneficiary situations is not a prerequisite in this Commonwealth. *Falsetti v. Local Union No. 2026, UMW,* 400 Pa. 145, 161 A.2d 882 (1960).

That the complaint alleges with specificity the third-party basis of liability is beyond question. Neither party has distinguished, however, between the various classes of third-party beneficiaries which is crucial in determining whether a party who is a stranger to the contract, and its consideration, may assert rights under the contract.

PennDOT is more than an "incidental beneficiary" of the Sanders-Bethlehem contract for the end product of the contract (design plans) was always intended to be used by PennDOT in framing their bidding specifications. *See Farmers National Bank of Ephrata v. Employers Liability Assurance Corporation,* 414 Pa. 91, 199 A.2d 272 (1964) ; *Williams v. Paxon Coal Company,* 346 Pa. 468, 31 A.2d 69 (1943). PennDOT's project was the sole reason for the existence of the Sanders-Bethlehem contract, and as such, PennDOT must be classified as an "intended beneficiary" capable of asserting contractual rights.

A demurrer has also been pleaded by Sanders as to Count III to the effect that PennDOT has failed to state a cause of action in assumpsit based on warranties running from Sanders to PennDOT. In this regard, PennDOT's complaint states:

"18. Since the 'work product' of Sanders and Thomas was a *bridge design* which required the application of this defendants' engineering skills in its preparation, there were additional contractual obligations running from Sanders and Thomas, Inc. to PennDOT in the form of certain *'warranties,' i.e., merchantability and fitness for the purpose intended with respect to the 'New Street Bridge' design,* so that when the bridge distress occurred in late June of 1970, both of these so-called warranties were breached by the defendant, Sanders and Thomas, Inc., thereby causing the plaintiff to suffer extensive and additional monetary damages beyond the ordinary and usual costs of construction." (Emphasis in original.) (Emphasis added.)

Sanders argues that PennDOT's pleading of warranty of fitness for a purpose for which the design plans were intended relates to the implied warranty sections of the Uniform Commercial Code, Sections 314 and 315, Act of April 6, 1953, P.L. 3, §§2-314, 2-315, *as amended,* 12A P.S. §§2-314, 2-315 (Code), and accurately points out that those warranties are unavailable since we are here concerned with a sale of other than goods. *Citing Aluminum Company of America v. Electro Flo Corporation,* 451 F.2d 1115 (10th Cir. 1971); *National Cash Register Company v. Haak,* 333 Pa. Superior Ct. 562, 335 A.2d 407 (1975); *Cox v. Shaffer,* 223 Pa. Superior Ct. 429, 302 A.2d 456 (1973). As defined in Section 2-105(1), the term "goods" does not contemplate those types of design plans at issue and we agree that the Code is inapplicable to the instant pleading of warranty.

However, PennDOT's brief tells us that it places no reliance on the Code, but rather points us to the case of *Bloomsburg Mills, Inc. v. Sordoni Construction Company, Inc.,* 401 Pa. 358, 164 A.2d 201 (1960), citing *Hill v. Polar Pantires,* 219 S.C. 263, 64 S.E.2d 885 (1951), in which our Supreme Court held that an architect is bound to perform with reasonable care the duties for which he contracts, and that when called upon to prepare plans and specifications which will give the structures so designed reasonable fitness for its intended purpose, he impliedly warrants them sufficiently for that purpose.

On the authority of *Bloomsburg Mills,* we dismiss this demurrer.

Sanders has also demurred to Count IV alleging that PennDOT has failed to state a cause of action in negligence. We agree. Count IV in its entirety states:

"20. The defendant, Sanders and Thomas, Inc. has been guilty of negligent ommissions [sic] and conduct which resulted in direct harm to the plaintiff, PennDOT, in the following particulars:

"(a) By providing a bridge design whose focus was principally on aesthetic and architectural achievement without recognition of the depth of engineering necessary and prudent for this type of structure, in order to insure public safety.

"(b) By ignoring or failing to comply with PennDOT's repeated requests for proper documentation that a rigorous analysis had been performed, that experience and judgment had been exercised, and that this structure was designed in accordance with AASHO requirements and standards customary for this type of structure."

Even a generous view toward liberalized pleading would not sanction the pleading of negligence of a defendant in this form. It is elementary that a plead-

er must aver that (1) defendant was negligent, *i.e.*, that a given standard of care is called for and that this standard of care was breached, or stated more simply, that the defendant acted less reasonably than the by now famous "reasonable man," (2) that this negligence was the cause in fact of the injury, (3) that the negligence was in fact the proximate cause of the injury, and finally (4) that injury, in whatever form, has indeed occurred. The courts of this Commonwealth, as well as those in other jurisdictions, ask no more of a pleader.

We will sustain Sander's demurrer, but given the liberal view to which we adhere with regard to amendment, we order PennDOT to amend for purposes of clarifying its allegations in trespass against Sanders.

3. Motion to Strike

Relying on Pa. R.C.P. No. 1044(b), Sanders asks us to strike the *ad damnum* clause of PennDOT wherein PennDOT prays for damages of $843,414.51 in Count IV, the count in which PennDOT has attempted to plead a trespass claim. Pa. R.C.P. No. 1044(b) states:

> (b) Any pleading demanding relief for unliquidated damages shall without claiming any specific sum, set forth only whether the amount is in excess of, or not in excess of $10,000.

The prayer for damages is inappropriate when measured by this rule and should therefore be stricken. PennDOT will be directed to amend, however, to cure this defect.

*Bethlehem v. Tensorex*
*Tensorex Preliminary Objections.*

Tensorex, by preliminary objection, brings before this Court four issues for our resolution:

1. Is the third party complaint against Tensorex (New York) and Tensorex (Florida) barred by the statute of limitations?

2.  Has Bethlehem failed to state a cause of action against both Tensorex companies?

3.  Does this count have jurisdiction over either Tensorex Company, considering the manner of service of the third party complaints?

4.  Has the third party plaintiff failed to comply with Pa. R.C.P. No. 2253 as to the time for joinder of Tensorex, Florida, thereby rendering the joinder ineffective?

Prior to speaking to the relative merit of each objection posed, it is necessary to offer some procedural background, and in particular, refer to President Judge Bowman's previous memorandum opinion in this matter dated May 26, 1976, and events subsequent thereto. In that opinion, President Judge Bowman disposed of a petition to join as additional defendants the Tensorex corporations (both of Florida and New York) and No. 1, which had been filed by Sanders. As previously noted, those parties were joined in this litigation by third party complaint of Bethlehem, not Sanders, and it was Sanders' aim to have them joined in order to have judgment entered in its favor, as well as in favor of Bethlehem. If the procedural swampland to which that memorandum opinion alluded ended upon this set of facts, it is clear that Pa. R.C.P. No. 2252(d) would control, permitting Sanders' joinder of the three parties by way of answer and new matter asserting third party liability against parties already joined in the action. Joinder was by no means as simple as application of 2252(d), as both Bethlehem and Sanders had filed preliminary objections to PennDOT's original complaint, and as Tensorex had filed preliminary objections to Bethlehem's third party complaint, Sanders was precluded from filing an answer to the Bethlehem complaint in which it might aver new matter sufficient to join the three additional defendants already joined by Bethlehem. Further,

because the three additional defendants were already parties pursuant to the third party complaint of Bethlehem, and Pa. R.C.P. No. 2252(b), the memorandum opinion noted that preliminary objections by the third party defendants might well resolve to a sustaining of those objections and the dismissal of Bethlehem's complaint. Sanders at this point in its petition voiced the concern that the statute of limitations regarding those third party defendants might run prior to the disposition of all preliminary objections before this Court.

President Judge BOWMAN's resolution to the Hobson's choice faced by Sanders was to hold that the statute is tolled as to the third party defendants as of the time they were joined by Bethlehem, and that tolling in fact inures to Sanders' benefit.

Following filing of the memorandum opinion, Bethlehem petitioned this Court to discontinue its action with respect to Tensorex. That petition was denied. To further confuse matters, Bethlehem and No. 1 have entered into an agreement whereby No. 1 was not compelled to answer the third party complaint of Bethlehem for an indefinite period *in futuro*, and Bethlehem has chosen not to respond either by answer or formal brief to the preliminary objections of third party defendant Tensorex.

If any cogent synopsis can be drawn from the preceding procedural thicket, it is that Bethlehem, for reasons not presently before this Court, has chosen not to pursue its complaints against Tensorex and No. 1 at this time.

This Court will sustain the Tensorex preliminary objections and effectively remove them from this litigation based on lack of answer, while Bethlehem, of its own volition, fails to proceed against No. 1. The logical final question is the procedural posture in which Sanders finds itself.

With the adjudication of the plethora of preliminary objections by this opinion, Sanders, with the aid of the tolling of the statute as to the present additional defendants, can proceed following the filing of an amended complaint by PennDOT, to answer that complaint alleging new matter sufficient to effect the joinder it seeks.

Consistent with the foregoing, having reviewed all preliminary objections filed on behalf of Tensorex and having received no answer by Bethlehem to those objections, we sustain the demurrer of Tensorex.

Accordingly, we

ORDER

AND Now, this 18th day of January, 1977, upon consideration of the foregoing, it is hereby ordered as follows:

*Bethlehem Steel Corporation's Preliminary Objections*

1.  The preliminary objection challenging the pleading of agency between Bethlehem and Sanders, pursuant to Pa. R.C.P. No. 1019(a), is hereby dismissed.

2.  The preliminary objection with respect to the *ad damnum* clauses of Counts I and II of PennDOT's complaint, pursuant to Pa. R.C.P. Nos. 1019(a) and (f), are hereby dismissed; however, it is ordered that amendment to the complaint be made with respect to damages claimed as a result of increased payments to No. 1.

3.  PennDOT's complaint shall also be amended to state with greater specificity the origin of damages based on omissions by Bethlehem versus those which arose as a result of alleged improper hiring by Sanders.

4. PennDOT is directed to aver with greater specificity the basis of its claim of damage for additional bonding and insurance premiums paid to No. 1 and state with greater specificity the basis of its claim for additional inspector office rentals and costs for railroad protection.

5. Bethlehem's objection based on Pa. R.C.P. No. 1019(h) is dismissed.

6. Bethlehem's objection based on Pa. R.C.P. No. 1019(a), stating that PennDOT had failed to plead with requisite specificity negligence against Bethlehem, is hereby dismissed.

7. Bethlehem's demurrer based on contractual language imposing duties to supervise upon PennDOT is hereby dismissed.

8. Bethlehem's demurrer to Count II and the pleading of negligence therein is dismissed.

9. Bethlehem's objection to Count II with respect to PennDOT's being barred by its own negligence is hereby dismissed.

### Sanders' Preliminary Objections

1. Sanders' motion for a more specific complaint, pursuant to Pa. R.C.P. No. 1019(a) with respect to the pleading of agency between Sanders and Bethlehem, is sustained and PennDOT is ordered to amend to state with greater specificity the existence of that agency.

2. Sanders' preliminary objection based on Pa. R.C.P. No. 1019(h) is sustained and PennDOT is ordered to append the report of the firm of Gannett, Fleming, Corddry & Carpenter, Inc., to its complaint.

3. Sanders' preliminary objection based on Pa. R.C.P. No. 1019(f) is sustained and PennDOT is ordered to amend its complaint to state with greater specificity the exact nature of repairs undertaken, the

time and place of those repairs, elements of damage with respect to those repairs, dates of bond and insurance premium payments, inspector office rentals, and the necessity to pay interest.

4. Sanders' demurrer to Count III of PennDOT's complaint and the third party beneficiary basis of liability is dismissed.

5. Sanders' demurrer to Count III based on warranties is hereby dismissed.

6. Sanders' demurrer to Count IV on the basis of failure to state a cause of action in negligence is sustained and PennDOT is ordered to aver with greater specificity the elements of such negligence.

7. Sanders' motion to strike based on Pa. R.C.P. No. 1044(b) is sustained; however, PennDOT is directed to amend to state with greater specificity damages contained in Count IV.

### Tensorex Preliminary Objections

1. The demurrer of Tensorex to the complaint of Bethlehem is hereby sustained with prejudice.

### ORDER

AND Now, this 28th day of January, 1977, our prior Order of January 18, 1977, is hereby amended in part to read as follows:

### Sanders' Preliminary Objections

1. Sanders' motion for a more specific complaint, pursuant to Pa. R.C.P. No. 1019(a) with respect to the pleading of agency between Sanders and Bethlehem, is denied.