# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Delaware Riverkeeper Network, the : 
Delaware Riverkeeper, Maya Van : 
Rossum, and Member, Kathleen : 
Stauffer, : 
                Petitioners : 
                :   No. 525 M.D. 2017
      v.              :   Argued: June 4, 2018
                : 
Pennsylvania Department of : 
Environmental Protection, : 
                Respondent :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**          **FILED: JULY 25, 2018**

Before this Court are preliminary objections to a petition for review (Petition) in this Court's original jurisdiction. The Petition is in the nature of a mandamus action seeking declaratory and injunctive relief.

Petitioners are Delaware Riverkeeper Network, Delaware Riverkeeper Maya van Rossum (Ombudsman), and Member Kathleen Stauffer (Stauffer) (collectively, Riverkeeper). Riverkeeper seeks to compel the Pennsylvania Department of Environmental Protection (DEP) to undertake environmental cleanup of the Bishop Tube Site, a contaminated 13.7-acre tract in East Whiteland Township, Chester County (Site). Riverkeeper also contends nearby groundwater and waters of the Commonwealth are incurring damage from spreading of the contamination beyond the Site. Riverkeeper alleges inaction by DEP in violation of the Clean

Streams Law,[1] the Hazardous Sites Cleanup Act (HSCA),[2] and Article I, Section 27 of the Pennsylvania Constitution (Environmental Rights Amendment).

In its preliminary objections, DEP contends this Court lacks jurisdiction over the claims in the Petition. Alternatively, DEP asserts Riverkeeper lacked standing to file the Petition. DEP also argues the Petition is barred by DEP's pending federal lawsuit against some potentially responsible third parties.

After briefing and argument, the preliminary objections are ripe for disposition. For the reasons that follow, we overrule DEP's preliminary objections.

## I. Background

For purposes of our disposition of DEP's preliminary objections, the following facts are accepted as set forth in the Petition.[3]

## A. Petitioners

Delaware Riverkeeper Network is a citizens' nonprofit membership organization, some of whose members live near the Site. Pet., ¶¶1, 12. Ombudsman is a privately funded ombudsman responsible for protecting the waterways in the

---

[1] Act of June 22, 1937, P.L. 1987, as amended, 35 P.S. §§691.1-691.1001.

[2] Act of October 18, 1988, P.L. 756, as amended, 35 P.S. §§6020.101-6020.1305.

[3] In ruling on preliminary objections, courts accept as true all well-pled allegations of material facts, as well as all inferences reasonably deducible from the facts. Stilp v. Commonwealth, 910 A.2d 775 (Pa. Cmwlth. 2006), aff'd, 974 A.2d 491 (Pa. 2009). For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery, and any doubt must be resolved in favor of the non-moving party. Id.

Delaware Valley watershed. <u>Id.</u>, ¶14. The common mission of Delaware Riverkeeper Network and Ombudsman is to protect and restore the Delaware River and its tributaries, habitats, and resources. <u>Id.</u>, ¶11. Little Valley Creek, a tributary of Valley Creek, is part of the Delaware River watershed. <u>Id.</u>, ¶13.

Stauffer is a member of Delaware Riverkeeper Network. <u>Id.</u>, ¶17. She lives about 100 yards from the Site; its spreading contaminants are endangering her, her family, and her property. <u>Id.</u>

## B. Contamination at the Site

The main hazardous contaminants at the Site are trichloroethylene (TCE) and other chlorinated volatile organic compounds and metals. <u>Id.</u>, ¶¶2, 23. High metal concentrations are present, causing or threatening harm to Little Valley Creek. <u>Id.</u>, ¶24. All environmental investigations at the Site indicate heavy contamination. <u>Id.</u>, ¶¶32-33. For example, the statewide health standard for acceptable TCE concentration in groundwater is five parts per billion, but the concentration at and near the Site is "in the hundreds of thousands." <u>Id.</u>, ¶35. A 2008 federal evaluation of the Site by the Agency for Toxic Substances and Disease Registry (ATSDR) confirmed heavy concentrations of TCE and its breakdown products, nitric and hydrofluoric acids, along with various oils and other hazardous materials that were not properly handled and disposed of at the Site. <u>Id.</u>, ¶33.

## C. DEP's Alleged Inactivity Concerning the Site

DEP knew about chlorinated solvent releases at the Site beginning in the 1980s. Id., ¶21. It began investigating the Site as an HSCA site in 1999. Id., ¶20.

DEP entered into a consent agreement in 2005 with a potential commercial developer, in which the developer agreed to remediate the Site to safe levels of contamination for non-residential development. Id., ¶36. The developer installed a remediation system intended to remove some contaminated vapors at the Site. Id., ¶¶37-38. However, in 2011, a contractor for the developer damaged the remediation system, rendering it inoperable. Id., ¶46. DEP waited until 2014 to serve a notice that the damage violated the consent agreement and potentially exacerbated the Site contamination. Id., ¶¶48, 52. Further, DEP took no action to enforce compliance by the developer concerning restoration of the remediation system. Id., ¶¶54-55. Moreover, DEP did not oppose the developer's subsequent amendment of its development plan from commercial to residential use, proposing to construct hundreds of residential units at the Site with no additional provisions for cleanup of the contamination to levels safe for residential use of the Site. Id., ¶¶27, 129.

By 2008, DEP had in its possession extensive subsurface studies and tests of the Site and its surroundings. Id., ¶33. Those studies and tests identified "'a well-defined geology and hydrogeology for both the [S]ite and the down gradient off-site residential area of concern … where a large chlorinated solvent plume has been identified through sampling and mapped via groundwater modeling.'" Id.

(quoting the ATSDR's 2008 evaluation of the Site). In its 2008 evaluation, the ATSDR determined DEP had enough information at that time to begin cleanup of the Site. Id., ¶34. Nonetheless, rather than start or cause the start of cleanup, in 2009 DEP executed a consent order and agreement with a potentially responsible party, which required only that the party conduct further investigative activities at the Site. Id., ¶43.

In 2008, DEP filed a civil action in a federal district court (Federal Action) seeking cleanup cost contribution from some potentially responsible parties. Id., ¶6; Prelim. Obj., ¶30; DEP's Br. at 21. However, Riverkeeper alleges DEP did not act diligently to pursue that action, allowing it to be stayed for eight years. Pet., ¶7. In the interim, although some potentially responsible parties performed further investigation concerning the extent of contamination at the Site, there was "virtually no substantive cleanup work on the Site." Id., ¶8.

The Site was formally identified on the Pennsylvania Priorities List of Hazardous Sites for Remedial Response in 2010. Id. Nonetheless, DEP allowed its pending Federal Action against potentially responsible parties to remain stayed for seven more years. Id., ¶7. The stay was lifted in the Federal Action in 2017. Id., ¶7. DEP filed an amended complaint adding more parties, and discovery began. Id.

### D. Harm Resulting from DEP's Alleged Inactivity

Riverkeeper avers DEP exhibited "manifest neglect and dilatory conduct" for at least 17 years, by failing to undertake or require remediation of the contamination at the Site. Id., ¶2. Riverkeeper alleges the known source

5

contamination at the Site could have been removed in a period of months, and DEP needlessly allowed it to remain at the Site without remediation for decades. Id., ¶79. As a result, the contamination spread, and continues to spread, beyond the Site to nearby groundwater and to Little Valley Creek, an Exceptional Value Stream.[4] Id., ¶¶2, 57-58, 70-71, 73.

In addition, residents living near the Site reported to DEP a number of suspicious "cancers, tumors, illness and deaths," including brain cancer suffered by Stauffer's teenage daughter, that may be linked to the Site contamination and its migration beyond the Site. Id., ¶¶60-62. To date, the ATSDR has linked TCE exposure to cancers of the kidneys, liver, and blood, as well as numerous other illnesses ranging from headaches, dizziness, and sleepiness to facial nerve damage, irregular heartbeat, kidney and liver damage, coma, and death. Id., ¶¶65-66.

Riverkeeper asserts there are available remediation efforts that could be beneficial and that immediate interim action by DEP is needed. Id., ¶¶73, 75. Riverkeeper specifically alleges that there is no adequate remedy at law. Id., ¶95.

**E. Riverkeeper's Legal Claims**

Riverkeeper seeks mandatory injunctive relief to require DEP to undertake cleanup of the Site, including immediate interim measures.

In Count I of the Petition, Riverkeeper alleges DEP has mandatory duties under the Clean Streams Law to investigate and act on complaints concerning

---

[4] An Exceptional Value Stream is the highest purity classification under Pennsylvania water quality standards. Pet., ¶102 (citing 25 Pa. Code §93).

6

water pollution, and to protect the waters of the Commonwealth. Id., ¶¶99-100, 104 (citing 35 P.S. §§691.5(b)(6),[5] 691.305[6]). Riverkeeper avers that DEP failed and is still failing to perform its statutory duties under the Clean Streams Law, with the result that the contamination at the Site moved downstream to nearby groundwater and Little Valley Creek. Id., ¶¶104-13. Riverkeeper contends DEP thereby also violated and continues to violate a parallel duty imposed by the Environmental Rights Amendment,[7] which safeguards the public's right to clean water. Id., ¶114.

In Count II, Riverkeeper alleges DEP has mandatory duties under the HSCA to assess and clean up hazardous sites, provide emergency response to environmental disasters, and protect citizens from the release of dangerous contaminants. Id., ¶¶121, 126-27, 131 (citing 35 P.S. §§6020.301,[8] 6020.501[9]). Riverkeeper asserts that DEP violated and continues to violate those duties by failing

---

[5] Section 5(b) of the Clean Streams Law.

[6] Section 305 of the Clean Streams Law.

[7] The Environmental Rights Amendment provides:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. art. I, §27.

[8] Section 301 of the HSCA.

[9] Section 501 of the HSCA.

7

for at least 17 years to undertake or compel environmental cleanup of the Site. Id., ¶¶122, 125, 128-29. As a result, surrounding groundwater and Little Valley Creek are incurring ongoing damage. Id., ¶¶123, 130.

In Count III, Riverkeeper alleges the Environmental Rights Amendment imposes an affirmative fiduciary duty on DEP to preserve and maintain natural resources, including pure water. Id., ¶¶136-37 (citing Pa. Envtl. Def. Found. v. Commonwealth, 161 A.3d 911 (Pa. 2017); Robinson Twp. v. Commonwealth, 83 A.3d 901 (Pa. 2013)). Riverkeeper contends DEP violated that duty by failing to undertake remediation and by failing to timely disclose information to the public concerning the Site. Id., ¶¶138-42.

In Count IV, Riverkeeper seeks a declaration that DEP is in violation of its duties under the Clean Streams Law, the HSCA, and the Environmental Rights Amendment. Id., ¶¶144-46. Riverkeeper also seeks an award of attorney and expert fees incurred in this litigation. Id., ¶147.

## II. Issues

In its preliminary objections, DEP asserts several legal arguments for dismissal of the Petition. DEP argues this Court lacks subject matter jurisdiction because Riverkeeper failed to join necessary parties. Further, DEP contends Riverkeeper lacks standing to sue because it suffered no damage in its own right. DEP also argues relief in mandamus is not available because the acts Riverkeeper seeks to compel are discretionary. Additionally, DEP avers Riverkeeper failed to

8

attach certain writings to the Petition as required by the Pennsylvania Rules of Civil Procedure.

DEP's remaining preliminary objections involve a common issue of whether DEP acted diligently regarding remediation at the Site. DEP demurs to all counts of the Petition, insisting Riverkeeper cannot maintain its action because DEP is acting diligently by pursuing contribution claims in federal court against some potentially responsible parties. In a related argument, DEP separately demurs to Counts I-III, contending Riverkeeper cannot obtain mandatory injunctive relief because DEP is acting diligently. DEP also demurs separately to Count IV, arguing its diligence eliminates any case or controversy for purposes of Riverkeeper's requested relief.

## III. Discussion
### A. DEP's Legal Arguments
### 1. Necessary Parties

DEP argues this Court lacks subject matter jurisdiction over the Petition because Riverkeeper failed to join as respondents the potentially responsible third parties that may ultimately be liable for the costs of remediation. DEP contends any judgment in this case will necessarily affect the rights of such parties, and thus, they are indispensable in this action. We find no merit in DEP's argument.

In determining whether a party is indispensable, courts consider whether absent parties have rights or interests related to the claim, whether those rights or interests are essential to the merits of the claim, and whether justice can be

9

afforded in disposing of the claim without violating due process rights of the absent parties.  Diess v. Pa. Dep't of Transp., 935 A.2d 895 (Pa. Cmwlth. 2007).

DEP cites CRY, Inc. v. Mill Service, Inc., 640 A.2d 372 (Pa. 1994) in support of its joinder argument.  However, DEP's reliance on CRY is misplaced. CRY concerned failure to join DEP itself.  Because the case involved issues affecting DEP's regulatory authority, DEP was an indispensable party.  Here, by contrast, DEP is already a party.

Riverkeeper seeks to compel DEP to perform duties Riverkeeper alleges are mandatory under state statutory and constitutional provisions. Riverkeeper is not asking this Court to determine the potentially responsible parties, prescribe the appropriate cleanup methodologies, or fix the ultimate costs.  This Court's resolution of this litigation will not affect any rights or defenses the potentially responsible parties may assert in enforcement actions by DEP, including the pending Federal Action.

Notably, the record does not indicate whether DEP has yet identified all potentially responsible parties.  It appears DEP has chosen to seek cost reimbursement from less than all potentially responsible parties in the Federal Action, as it is legally permitted to do.  Requiring Riverkeeper to include all potentially responsible parties in this action would usurp DEP's right, duty, and discretion to determine the appropriate parties from whom to seek reimbursement. Moreover, requiring Riverkeeper to identify and include all potentially responsible parties would impose an impossible burden on Riverkeeper that would render

10

illusory the private right of action the legislature intended to confer in the Clean Streams Law and the HSCA.

DEP additionally posits that in the absence of potentially responsible parties, the remedies Riverkeeper seeks in this litigation would "likely result in a less comprehensive remediation." DEP's Br. at 47. DEP fails to explain this contention. Moreover, that consideration is not among the legal factors set forth above that courts weigh in determining whether joinder of a party is necessary. Significantly, it is also a question of fact that cannot be determined on preliminary objections.

## 2. Riverkeeper's Standing under the HSCA

DEP argues the Petition should be dismissed for lack of standing under the HSCA. Regarding Delaware Riverkeeper Network and Ombudsman, DEP contends they did not plead actual or threatened harm directly to them, but only to some unidentified members living near the Site. DEP asserts that environmental contamination and release of hazardous substances do not constitute actual property damage or injury to Delaware Riverkeeper Network and Ombudsman.

Regarding Stauffer, DEP concedes she did allege personal injury and property damage, but argues she did not support those allegations with sufficient averments of fact. Further, DEP points out Stauffer is a party to the Petition as a member of Delaware Riverkeeper Network, not as an individual. Thus, DEP contends any injury to her cannot confer standing to the organization under the HSCA. We reject DEP's arguments concerning standing.

11

The HSCA confers standing on any person who experiences or is threatened with personal injury or property damage from the release of a hazardous substance. 35 P.S. §6020.1115(a).[10] Under the HSCA, a "person" includes not only an individual, but also a corporation, association, or other legal entity. 35 P.S. §6020.103.[11] Accordingly, all three Petitioners are "persons" under the HSCA. Id.

Regarding the requirement of actual or threatened harm, Riverkeeper correctly observes that Pennsylvania allows an environmental rights organization to bring a cause of action without pleading any injury to itself, if it alleges that at least one of its members is suffering immediate or threatened injury. See, e.g., Robinson Twp. (Delaware Riverkeeper Network and Ombudsman had standing to bring action based on threatened injury to members and their properties arising from Marcellus Shale operations). For purposes of resolving DEP's preliminary objections, we conclude Riverkeeper sufficiently alleged environmental contamination, its effect on members of Delaware Riverkeeper Network, including Stauffer, and ongoing threats of damage to property and health. Accordingly, Riverkeeper pled sufficient facts to establish standing to pursue the Petition.

### 3. Availability of Mandamus to Compel Action by DEP
### a. Pleading a Mandamus Claim

DEP contends its duties concerning environmental cleanups are discretionary and not subject to a mandamus action. DEP's argument is insufficient to dispose of the Petition at the preliminary objection stage.

---

[10] Section 1115 of the HSCA.

[11] Section 103 of the HSCA.

12

A mandamus action will lie to compel performance of a mandatory, non-discretionary governmental duty. See Diess. Importantly, it will also lie to compel action where the government agency is failing to act at all. Chanceford Aviation Props., LLP v. Chanceford Twp. Bd. of Supervisors, 923 A.2d 1099 (Pa. 2007).

In Diess, this Court overruled preliminary objections to a petition for review that alleged DEP failed to perform its duties to develop and enforce a program to investigate and clean up hazardous sites in Pennsylvania. This Court found there were factual disputes concerning DEP's actions to remediate the contamination at issue.

As discussed in section B below, there are also issues of fact here concerning DEP's conduct relating to the Site. As in Diess, this Court cannot resolve such issues on preliminary objections.

### b. Nature of DEP's Mandatory Duties

Significantly, DEP acknowledges it does have some non-discretionary duties under the HSCA, the Clean Streams Law, and the Environmental Rights Amendment. Specifically, DEP admits the HSCA imposes a mandatory duty to develop programs to investigate and remediate contamination by hazardous substances. It admits the Clean Streams Law imposes a mandatory duty to receive and act on complaints of water pollution and other violations. It admits the Environmental Rights Amendment imposes a mandatory duty to prevent

13

degradation of the environment and to serve as a trustee for Pennsylvania's natural resources.

DEP insists it has carried out its mandatory duties with regard to the Site, by proceeding diligently toward remediation since 1981. However, DEP acknowledges that is a long time. As discussed in section B below, whether DEP has been diligent in its efforts since 1981 presents questions of fact that cannot be resolved on preliminary objections.

DEP concedes that a mandamus claim will lie where a state actor has done nothing or "virtually" nothing toward performing a mandatory duty. DEP's Br. at 38. As set forth above, Riverkeeper pleads numerous facts supporting its contention that DEP failed to act to remediate the contamination at the Site. Moreover, Riverkeeper expressly alleges DEP performed "virtually no substantive cleanup work on the Site." Pet., ¶8. Thus, Riverkeeper pleads DEP inaction squarely within the parameters DEP concedes will support a mandamus action.

Nonetheless, DEP attempts to distinguish Diess by arguing that the petition for review in that case survived preliminary objections because the petitioner alleged DEP did nothing at all, while here, Riverkeeper only alleges DEP did almost nothing. We reject DEP's argument. If the difference between nothing and almost nothing were deemed meaningful in pleading a mandamus claim under the HSCA or the Clean Streams Law, DEP could always avoid such a claim by any act, however minimal, toward remediation. Thus, if doing almost nothing could constitute diligence, it would render illusory the private rights of action in both the

HSCA and the Clean Streams Act, by eliminating the requirement of diligent efforts by DEP in order to forestall such private actions.

As this Court explained in <u>Diess</u>, a mandamus action will lie where an agency is not fulfilling a mandatory duty to enforce a statute, even though it will not lie to compel specific discretionary methods of such enforcement. Here, Riverkeeper is not seeking to impose on DEP a specific plan or method of enforcement concerning remediation at the Site. Rather, it is pursuing claims in mandamus because it alleges DEP has been "'sitting on its hands'" regarding enforcement and remediation efforts at the Site. Riverkeeper's Br. at 28-29 (quoting <u>Chanceford</u>, 923 A.2d at 1108) (additional citations omitted).

### c. Alternative Remedies

DEP further asserts that a mandamus action will not lie because Riverkeeper has alternative remedies that are appropriate and adequate. According to DEP, Riverkeeper may intervene in the Federal Action. It may also offer comments in the administrative process once DEP proposes a response to the contamination at the Site. DEP suggests these alternatives "provide [Riverkeeper] with a meaningful opportunity to contribute to the development of the best possible remediation plan for the Site." DEP's Br. at 39. This argument lacks merit.

Waiting for a remediation plan and then commenting on it will not afford the relief Riverkeeper is seeking, which is to compel DEP to move forward to create and implement such a plan. After waiting since 1981 to see a proposed remediation plan, while watching the contamination at the Site spread to the

15

surrounding groundwater and Little Valley Creek, Riverkeeper decries DEP's suggested wait-and-comment remedy.

Similarly, Riverkeeper disputes the sufficiency of DEP's proposed remedy of intervention in the Federal Action against some potentially responsible parties. In fact, Riverkeeper disputes DEP's suggestion that intervention would be permitted at all in the Federal Action. Further, Riverkeeper contends it cannot obtain a meaningful remedy in that action. It is not seeking recovery of costs against the potentially responsible parties, which is the only relief DEP is requesting in the Federal Action. Merely commenting on DEP's cost claims in that action will not afford the relief Riverkeeper is seeking here, which is to compel DEP to move forward with remediation. Additionally, Riverkeeper argues that the continuation and increase of contamination in groundwater and Little Valley Creek constitute irreparable harm not amenable to the alternative remedies DEP suggests. We agree, and we reject DEP's alternative remedy argument.

### 4. Failure to Attach Certain Writings to the Petition

Rule 1019(i) of the Pennsylvania Rules of Civil Procedure provides:

> When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance of the writing.

Pa. R.C.P. No. 1019(i) (emphasis added).

16

DEP urges this Court to dismiss the Petition because Riverkeeper failed to attach certain documents. Specifically, DEP argues Riverkeeper failed to attach a 2005 agreement between DEP and the proposed developer of the Site, subsequent 2007 and 2010 amendments to the agreement, and public notices concerning the agreement and amendments. DEP asserts this failure violates Rule 1019(i) and requires dismissal of the Petition. There is no merit in DEP's argument.

As Riverkeeper points out, it did attach to the Petition the most recent version of the agreement at issue. Riverkeeper also explains that it is not seeking to enforce any version of the agreement or any remedy provided in any version of the agreement; rather, Riverkeeper's main complaint regarding the agreement is DEP's alleged failure to publicize it. Thus, Riverkeeper correctly argues the agreement is not the basis of the Petition and so is not within the purview of Rule 1019(i). See, e.g., Dep't of Transp. v. Bethlehem Steel Corp., 368 A.2d 888 (Pa. Cmwlth. 1977) (preliminary objection based on failure to attach written contract overruled where contract was not essence of cause of action).

In addition, DEP is a party to and in possession of the agreement and its amended versions, making attachment to the Petition unnecessary. See Narcotics Agents Reg'l Comm. v. Am. Fed'n of State, Cty. & Mun. Emps., 780 A.2d 863 (Pa. Cmwlth. 2001) (writings in possession of opposing party need not be attached to pleading). In fact, DEP published the documents on its website. Further, the agreement and its amendments are exhibits in an administrative appeal challenging their validity, a link to which Riverkeeper provided in its brief in opposition to DEP's preliminary objections. Thus, the documents are public in nature and need not be

17

attached to the Petition.  See Dep't of Envtl. Res. v. Peggs Run Coal Co., 423 A.2d 765 (Pa. Cmwlth. 1980) (pursuant to Pa. R.C.P. No. 1019(d), petition for review did not have to attach DEP agreement).

## B. Fact Questions Regarding DEP's Alleged Diligence
### 1. DEP's Averments of Diligent Conduct

Although both the Clean Streams Law and the HSCA provide private rights of action, both also contain exceptions precluding private actions where DEP "'has commenced and is diligently prosecuting' a civil action in state or Federal court to require compliance with the applicable statute …." DEP's Br. at 2 (quoting 35 P.S. §§691.601(e),[12] 6020.1115(b)[13]) (emphasis added).  DEP argues Riverkeeper is barred from asserting its claims, because DEP is diligently prosecuting its Federal Action.  DEP argues it does not need prompting from Riverkeeper through the Petition, because DEP filed the Federal Action long before Riverkeeper involved itself in seeking action at the Site.  DEP's argument is without merit.

DEP acknowledges it placed the Federal Action in civil suspense from 2009 to 2017.  However, DEP points out that the parties reported periodically to the federal court during that period on the status of the case.  Notably, those reports were at first submitted monthly, and then quarterly; eventually, reports were filed only biannually.

---

[12] Section 601 of the Clean Streams Law.

[13] Section 1115 of the HSCA.

18

The Federal Action became active again in 2017. DEP amended its complaint, and discovery commenced. DEP strenuously insists its course of conduct constituted diligent prosecution of the Federal Action.

Both parties acknowledge that Pennsylvania courts have yet to construe the diligent prosecution bar under the Pennsylvania statutory and constitutional provisions at issue in this case. DEP relies, by analogy, on federal court decisions discussing diligent prosecution under federal environmental laws.[14] However, such federal decisions are not directly applicable for three reasons. First, they relate to federal laws, not Pennsylvania state laws. Second, they do not arise in the context of a body of law with an overarching state constitutional mandate for protection of the environment. Third, even under analogous federal laws, the question of diligent prosecution is one of fact. It cannot be decided as an issue of law on preliminary objections. See Grp. Against Smog & Pollution, Inc. v. Shenango Inc., 810 F.3d 116 (3d Cir. 2016). Therefore, applying the definition of diligence as analyzed in federal decisions cannot eliminate the question of fact as to whether DEP's course of conduct was diligent in this case. Thus, federal decisions do not support dismissal of the Petition.

DEP also insists its conduct has conformed to what it characterizes as national norms, under which, according to DEP, major remediation efforts

---

[14] DEP cites Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., 484 U.S. 49 (1987); GASP v. Shenango Inc., 810 F.3d 116 (3d Cir. 2016); Karr v. Hefner, 475 F.3d 1192 (10th Cir. 2007); Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist., 382 F.3d 743 (7th Cir. 2004), cert. denied, 544 U.S. 913 (2005); N. & S. Rivers Watershed Ass'n, Inc. v. Town of Scituate, 949 F.2d 552 (1st Cir. 1991); Cmty. of Cambridge Envtl. Health & Dev. Group v. City of Cambridge, 115 F. Supp. 2d 550 (D. Md. 2000); Williams Pipe Line Co. v. Bayer Corp., 964 F. Supp. 1300 (S.D. Iowa 1997).

commonly take several decades. Like DEP's analogy to federal court decisions, its reference to purported national norms fails to support its preliminary objections. Like the federal decisions, the supposed national norms do not relate to remediation governed by Pennsylvania state law; nor do they concern enforcement of a constitutionally protected right to a clean environment. They also do not eliminate the issues of fact surrounding DEP's diligence in pursuing remediation efforts at the Site. Moreover, the persuasive value of applying such supposed "norms" is questionable, as it encourages a bootstrapping argument that seeks to justify ongoing dilatory conduct by reliance on previous inaction.

DEP filed the Federal Action in 2008. It then stayed the action for nine years. Not until 2017 did it lift the stay and file its amended complaint. Riverkeeper avers that during those nine years, DEP took no action to begin remediation at the Site, despite having sufficient studies and reports by 2008 to allow it to do so, and despite knowledge that the contamination was migrating beyond the Site and threatening groundwater and Little Valley Creek, an Exceptional Value Stream. Notably, DEP also did not take any emergency interim action, although effective interim measures were available, and the HSCA provides for implementing such measures. See 35 P.S. §6020.505(b)[15]; Dep't of Envtl. Res. v. Bryner, 636 A.2d 227 (Pa. Cmwlth. 1993). By pleading these averments, Riverkeeper raises questions of fact concerning DEP's diligence that are sufficient to survive DEP's preliminary objections.

---

[15] Section 505 of the HSCA.

## 2. Inapplicability of Statutory Bars to Riverkeeper's Claims

As explained above, DEP contends the entire Petition is barred by DEP's alleged diligence in pursuing the Federal Action against some potentially responsible parties. However, even assuming DEP diligently pursued the Federal Action, the pendency of that action does not bar Counts I, III, and IV of the Petition.

In the Federal Action, DEP asserts claims under federal law and the HSCA. Pet., ¶6; DEP's Br. at 21. At most, diligence by DEP in pursuing the Federal Action might bar claims against DEP asserted here by Riverkeeper in Count II under the HSCA, the only statute common to both actions. However, Riverkeeper also asserts claims under the Clean Streams Law and the Environmental Rights Amendment. Neither is "the applicable statute" in the Federal Action, so DEP's alleged diligence in that action cannot bar claims against it under the Clean Streams Law and the Environmental Rights Amendment. Moreover, the Environmental Rights Amendment contains no language that would preclude legal action because of DEP's alleged diligence in pursuing an enforcement action against third parties.

## 3. Mandatory Injunctive Relief

DEP argues the Petition should be dismissed because a mandatory injunction is an extreme remedy that Riverkeeper will not be able to obtain. We discern no merit in this argument.

DEP contends Riverkeeper cannot establish several required elements for obtaining a mandatory injunction, including that irreparable harm will occur without the injunction, that greater injury will result from denying the injunction

21

than from granting it, and that an injunction will restore the status quo. All of these elements present questions of fact that cannot be resolved on preliminary objections.

Moreover, Riverkeeper does allege facts that, if proven, could establish all of the elements necessary to obtain injunctive relief. Notably, Riverkeeper avers both actual and threatened disease and even death resulting from the ongoing contamination at and around the Site, as well as untold harm to groundwater and an Exceptional Value Stream. The Petition supports these averments with facts and statistics. It provides clear notice to DEP of the nature of Riverkeeper's claims. This is sufficient at the preliminary objection stage.

DEP also argues that a mandatory injunction will do more harm than good because DEP can progress faster toward remediation without having to comply with any judicial order that might be entered in this case. Like the other issues raised by DEP, this is a question of fact not appropriate for disposition on preliminary objections. Further, DEP fails to support its suggestion that a judicial directive to start undertaking some remediation efforts would somehow slow down such efforts.

Significantly, DEP acknowledges Riverkeeper might be entitled to seek mandatory injunctive relief if it averred that DEP's pursuit of remedial action was "totally unsatisfactory." DEP's Br. at 42. DEP incorrectly contends Riverkeeper did not offer such an averment. Riverkeeper may not have used that specific phrase, but that is the overarching basis of the entire Petition.

**4. Actual Case or Controversy**

In another iteration of its diligence argument, DEP contends its alleged diligence in investigating and addressing the contamination at the Site eliminates any case or controversy for purposes of Riverkeeper's request for relief. This contention lacks merit because it again depends on issues of fact.

Riverkeeper argues there is an actual case or controversy supporting its claims. As Riverkeeper observes, the parties disagree whether DEP has been diligent in its actions. The Petition avers current and threatened harm to persons and property resulting from DEP's alleged ongoing inactivity at the Site. In addition, Riverkeeper points out that despite DEP's claims that it actively investigated the Site, its failure to undertake or cause remediation at the Site for two decades could constitute a failure to comply with its statutory and constitutional duties. <u>See</u> <u>Chanceford</u> (mandamus would lie to compel statutorily-mandated action despite agency's averment it was already investigating what action to take).

Riverkeeper's averments are sufficient to plead a case or controversy. Accordingly, we overrule DEP's preliminary objection to Riverkeeper's request for relief.

**IV. Conclusion**

DEP's legal arguments for dismissal lack merit. Riverkeeper did not fail to join any necessary parties, and this Court does not lack subject matter jurisdiction. Riverkeeper has standing to sue. Riverkeeper's requested relief in mandamus is not unavailable as a matter of law. Riverkeeper did not fail to attach

to the Petition any writings required by the Pennsylvania Rules of Civil Procedure. DEP's various arguments based on its averment of diligence in pursuing remediation all fail because the issue of whether DEP acted diligently is a question of fact that cannot be resolved on preliminary objections. Accordingly, we overrule all of DEP's preliminary objections.

ROBERT SIMPSON, Judge

Judge Fizzano Cannon did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Delaware Riverkeeper Network, the : 
Delaware Riverkeeper, Maya Van : 
Rossum, and Member, Kathleen : 
Stauffer, : 
                     Petitioners : 
                              :   No. 525 M.D. 2017
         v. : 
                              : 
Pennsylvania Department of : 
Environmental Protection, : 
                     Respondent : 

# **O R D E R**

**AND NOW**, this 25th day of July, 2018, the Pennsylvania Department of Environmental Protection's (DEP) preliminary objections are **OVERRULED**. DEP shall file an answer to the Petition for Review within 30 days of the date of this Order.

 

                                                 
_____
ROBERT SIMPSON, Judge